1

**NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)

2
   Alex Tomasevic (SBN 245598)
   Ethan T. Litney (SBN 295603)

3
225 Broadway, 19th Floor
San Diego, California 92101

4
Tel: (619) 325-0492
Fax: (619) 325-0496

5
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

6
Email: elitney@nicholaslaw.org

7
Attorneys for Plaintiff

8

9
                **UNITED STATES DISTRICT COURT**

10
              **NORTHERN DISTRICT OF CALIFORNIA**

11

12
ZACHARY ZEFF, an individual, on behalf
of himself and on behalf of others similarly

13
situated,

14
             Plaintiff,

15
   vs.

16

17
GREYSTAR REAL ESTATE
PARTNERS, LLC, a Delaware Limited

18
Liability Company;

19
            Defendants.

20

21

22

23

24

25

26

27

28

Case No.

**CLASS ACTION COMPLAINT FOR:**

**(1) VIOLATION OF CAL. CIV. CODE § 1671**

**(2) VIOLATION OF CAL. CIV. CODE § 1950.5**

**(3) UNLAWFUL AND UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200 *et seq.*)**

**(4) UNJUST ENRICHMENT / QUASI-CONTRACT**

**(5) DECLARATORY JUDGMENT**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

## I.   <u>INTRODUCTION</u>

1.      Defendant Greystar is the largest owner and operator of apartments in the United States and second largest owner and operator of student housing.  It has enjoyed massive growth and profits in recent years – much of it thanks to its numerous and unrelenting fees and penalties that it charges tenants – often students and young workers with few resources and who depend on Greystar to not take away the roof over their head.  Greystar gladly takes advantage of this power imbalance, thrusting illegal late fee penalties on its tenants, utility fees, utility "administration" fees and penalties, and others, in an effort to squeeze all it can from its tenants, regardless of the law.

2.      Greystar also takes the extra step of calling all extra fees and penalties "rent," which is a clever accounting trick Greystar invented to ensure that fees will generate fees.  For example, per Greystar's typical practice, Greystar imposes a $100 late rent penalty whenever rent is even a minute late and regardless of whether that minimal tardiness actually cost Greystar anything or damaged it in any way. Then, upon receiving the tenant's subsequent monthly rent payments, Defendant applies that payment to the previously recorded debt first (including the assessed penalties), rather than the base rent due for the month in which payment is actually made.  Defendant then considers that month's "rent" as not yet fully paid and then assesses *another* late rent penalty despite the tenant's full and timely monthly base rent payment.  As a result, Defendant charges another late penalty of $100 on a balance that may be only $100 to begin with, or *even smaller* - such as when a tenant timely pays their base rent *and* any late penalty, but maybe forgets to also include the $3.95 "utility administration" fee that Greystar unilaterally imposes on tenants for taking over payment of utility bills (which tenants never asked or authorized Greystar to do in the first place).  In short, being a day late on a $3.95 "balance" that should have never been incurred in the first place creates an additional $100 penalty.  This stacking or pyramiding all but guarantees tenants will incur repeated late penalties, or penalties on penalties.  This happened to Plaintiff and many members of the Class.

3.      In short, and as explained further below, Defendant's late fee scheme amounts to an illegal, and thus void, penalty under California law.  The entire penalty scheme is illegal

CLASS ACTION COMPLAINT

1    because, among other reasons, it is excessive, and bears no relation to any actual damages

2    incurred by Defendant when rent or other fees are paid late. *See, e.g.,* Cal. Civ. Code § 1671(d);

3    Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981).

4          4.     Separately, Greystar squeezes additional illegal profits at the end of all tenancies

5    by systematically taking illegal deductions from tenant security deposits.   For example, and

6    even though it is so quick to penalize supposedly "late" payments it believes it is owed, Greystar

7    is uninterested in timely returning tenant security deposit money when required by California

8    law.  The Civil Code requires the return of security deposits within 21 days of move-out, yet

9    Greystar routinely ignores that rule.  The Code also requires detailed descriptions and evidence

10   to support any security deposit deductions it chooses to make.  Greystar routinely ignores that

11   rule too.

12         5.     Plaintiff is a former Greystar tenant who rented from Greystar in the San

13   Francisco Bay Area.  Greystar charged plaintiff the illegal penalties mentioned above and failed

14   to timely return his security deposit upon move out or sufficiently document its nebulous

15   security deposit deductions.  Plaintiff now brings this action to challenge Defendant's illegal

16   penalties and security deposit practices on behalf of himself and all other similarly situated

17   California tenants.

18                 **II.     JURISDICTION AND VENUE**

19         6.     There is subject matter jurisdiction under the Class Action Fairness Act of 2005

20   ("CAFA"), 28 U.S.C. § 1332(d).  This Court has jurisdiction under CAFA because there are

21   more than one hundred putative Class members, the aggregate claims of the putative Class

22   members exceed $5 million, exclusive of interest and costs, and at least one of the members of

23   the proposed class is a citizen of a different state than one or more Defendants.

24         7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

25   substantial part of the events or omissions giving rise to the claim occurred in this district.

26   Plaintiff's Greystar apartment was within this district.  Venue is also proper in this district

27   pursuant to 28 U.S.C. § 1441(a), given that this Court has subject-matter jurisdiction under

28   ///

CLASS ACTION COMPLAINT

1  CAFA. Venue in this district is also proper because Defendant "resides" in this district under 28

2  U.S.C. § 1391(b)(1) and (c)(2), in that Defendant is subject to this Court's personal jurisdiction

3  with respect to this civil action.

### III.    THE PARTIES

8.    Plaintiff Zachary Zeff was a tenant of Defendant Greystar Real Estate Partners, LLC in California.  He was subject to Defendant's illegal late rent penalty policy and he was forced to pay, and did pay, illegal penalties to Defendant.  Defendant also failed to timely return Plaintiff's security deposit or adequately document and support deductions it made from Plaintiff's deposit.

9.    Defendant Greystar Real Estate Partners, LLC (referred to throughout as "Greystar") is the largest owner, manager, and operator of apartments in the U.S. and second largest owner, operator, and manager of student housing it the U.S.  It is a Delaware LLC with its main headquarters in Charleston, South Carolina.  Greystar owns, manages, and operates thousands of apartment units in California, including at least 79 large apartment communities in our Bay Area.  Greystar owned, managed, and operated Plaintiff's apartment.  Greystar was Plaintiff's landlord and Greystar charged and collected all the illegal fees/penalties described in this Complaint.  Greystar was also responsible for timely returning the security deposits described in this complaint and was responsible for properly documenting and supporting all deductions from those tenant security deposits – all of which it failed to do.

### IV.    ADDITIONAL FACTS COMMON TO CLASS MEMBERS

10.    Greystar's late penalty scheme has several components that work together.  First, Greystar mandates a standard $100 per-occurrence late rent penalty that it automatically imposes the minute it deems rent late.  This late fee by itself is exorbitant when you do the math. For example, say rent at a Greystar property is $2,699 per month.  If the tenant paid his or her base rent just one day late, Defendant would charge the tenant a minimum $100 penalty.  That amounts to an over 650% annual interest rate on that $2,699 original balance.

11.    Next, Greystar routinely insists that utility payments, such as for gas and electricity, be paid to the utility provider using Greystar's own payments platform.  I.e., Greystar

1   collects the utility bills, then puts the utility charges on the tenant's account and ledger, and the

2   tenant then pays the utility to Greystar just like he or she would pay regular base rent.  Greystar

3   does this without the tenant's permission.  This, along with all fees and rental practices described

4   in this complaint, are part of a take-it-or-leave it arrangement that Greystar forces on all tenants.

5   Then Greystar charges at least $3.95, every month, to every tenant, as an additional

6   "administration" fee on top of the actual cost for the utilities.

7          12.     Greystar's interception of the utility fees and its imposition of the utility

8   administration fee factors into and often generates its own additional late fees (i.e. another $100

9   penalty) either on its own or as a result of the stacking or pyramiding practice described in the

10  Introduction above.  For example, Greystar's routine practice and policy is to categorize the

11  utility fees as well as the $3.95 admin fee as "rent."  Again, Greystar does this without the

12  agreement or approval of its tenants.  In fact, Greystar unilaterally expands the definition of rent

13  even when its written lease defines rent more strictly, e.g. when the lease defines "rent" as

14  merely the base rent for occupying the unit.

15         13.     In turn, if this new "rent" (e.g. the water bill or the $3.95 administration fee) is

16  not, itself, paid according to Greystar's schedule, then Greystar adds a $100 "late rent" penalty.

17  Stacking then happens if the $3.95, or the water bill, or the $100 penalty from January (for

18  example) was not *all* paid in a timely fashion according to Greystar, even if the January base rent

19  was paid, and even if the tenant timely pays his February base rent (plus his February utilities,

20  plus his $3.95 administration fee for February).  This tenant is *still* "late" with his February

21  "rent" according to Greystar if he did not *also* include enough money to cover the late fee

22  charged for January, or if he covered his January late fee and January water bill, but not his

23  $3.95 administration fee for January.   In short, a measly $3.95 unpaid in January costs the tenant

24  $200 in penalties ($100 in January and another $100 in February).

25         14.     Remarkably, Greystar still systematically charges these penalties even when

26  tenants pay their base rent *early*.

27         15.     Plaintiff Zachary Zeff was a tenant at a Greystar apartment community in San

28  Rafael.  Greystar charged and Plaintiff paid the $100 late penalty on several occasions, even in

months when he paid his base rent early.  For example, Plaintiff's rent, according to his lease and as of May 2019, was $2250 per month. To be safe, Plaintiff paid his May rent in <u>April</u> of 2019. In fact, he overpaid May rent by about $30.  Greystar credited Plaintiff's account with the rent payment.  But thereafter Greystar charged Plaintiff's account about $140 for utilities, plus the standard $3.95 utility "administration" fee.  And while Plaintiff's early rent payment was enough to cover his actual rent (plus a little extra), Greystar created a shortfall on Plaintiff's account by virtue of its accounting and these additional fees. As a result, Greystar also then tacked on the standard $100 late penalty.

16.    Greystar did the same thing to Plaintiff the next month.  Specifically, Plaintiff paid his rent early.  And he even paid a little extra again.  But Plaintiff did not pay enough to bring his Greystar balance to zero after accounting for Greystar's unilaterally imposed utility fees, utility admin fees, and prior "late" penalty assessment. Thus, Greystar charged, and Plaintiff had to pay (and he paid) another $100 penalty.

17.    Eventually plaintiff moved out of his Greystar apartment.  He asked for refunds of these illegal penalties, but Greystar refused.

18.    Then came the time for Greystar to refund Plaintiff's $700 security deposit.  By law, Greystar had 21 days to do so.  Greystar was also required to itemize and provide backup documentation (such as repair bills or receipts) for any deductions it took from Plaintiff's deposit.  But Greystar paid back Plaintiff's security deposit late and when it finally did pay, it had deducted almost 20% (about $127) without providing the requisite itemizations or backup documents.   Plaintiff repeatedly requested documentation supporting Greystar's deduction. Greystar has refused to comply and continues to hold onto Plaintiff's money to this day

19.    Defendant knows it has virtually unchecked power to collect whatever fee it wants, *when* it wants, no matter how illegal it may be.  This is because the system that Defendant deployed is protected by the threat of eviction.  *I.e.*, Defendant knows that the tenant faces the following dilemma:  pay the late fees and stacked penalties, or challenge them but swiftly see a

///

///

CLASS ACTION COMPLAINT

1   "3-Day Notice to Pay Rent or Quit" posted on your front door and risk eviction for yourself and

2   your family.  When faced with that choice, tenants begrudgingly pay the penalty, and Defendant

3   knows this.

4        20.    The dilemma surrounding Defendant's illegal security deposit practices is

5   different, but equally powerful.  With the security deposit, the tenant is already out of the

6   apartment, but then is forced to think about suing a multi-billion-dollar landlord to get back

7   $100.  Defendant knows that most tenants will never bother.

8        21.    Defendant's actions described above are illegal and have injured thousands of

9   California consumers.  Defendant's late penalty—both the $100 "fee" by itself, and when

10  combined with stacked fees and/or added additional fees—is an arbitrary amount which

11  functions as an illegal penalty.

12       22.    In California, late rent fees are presumed to be illegal unless the landlord –

13  Greystar here – can prove two things: (1) that it would be extremely difficult or infeasible to

14  calculate actual damages from the late payment; *and* (b) they undertook a sufficient endeavor to

15  set a reasonable amount in light of the actual harm. *See, e.g.,* Cal. Civ. Code § 1671(d);

16  Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981); U.C.C. § 2-718(1).

17       23.    Defendant's late penalty scheme utterly fails on both points.  First, it is not

18  difficult or infeasible to calculate damages from late rent.  In most cases, rent is only a few days

19  (perhaps only hours) late, causing no actual damage to Defendant. Moreover, the accounting for

20  and collection of rent and late fees is automated (i.e. computerized) by all corporate landlords,

21  including at Greystar.  Thus, little or no human intervention is required, resulting in no

22  opportunity cost. Moreover, loss of use of having rent money sitting in a bank account by a

23  certain hour or day, furthermore, can be compensated by a marginal interest payment that is

24  definite and easily ascertainable, as courts have long held. And in more advanced cases when

25  Defendant seeks to collect late rent payments by actually filing an unlawful detainer action, they

26  charge attorney's fees and costs separately to those tenants, demonstrating that Defendant views

27  those legal costs as separate from the damages that allegedly flow automatically from rent being

28  paid late (even assuming that such costs could lawfully be recouped via late fees).  Second, on

CLASS ACTION COMPLAINT

information and belief, Defendant has never made a reasonable endeavor to estimate a fair average or actual compensation for the losses sustained when a tenant pays rent late, as required when setting a lawful "liquidated damage."

24.     Particularly nefarious and punitive is Defendant's uniform practice of stacking or "pyramiding" penalties upon penalties.  Defendant imposes the $100 penalty.  Defendant then systematically imposes additional fees, like utility administration fees.  Then, separately and month after month, Defendant stacks another $100 fee on top even when a tenant is carrying a minimal balance, and even if the tenant has paid the base rent for that month (but, perhaps, not paid the full amount of all of the additional fees or penalties that Defendant unilaterally imposed).  This policy creates multiple late charges based on a single original payment. As a result, tenants incur repeated late penalties.  This happened to Plaintiff and many members of the Class.

25.     Likewise, Defendant's refusal to timely refund security deposits and to adequately support its unilateral deductions from the deposits has cost Plaintiff, and many class members in the aggregate, millions of dollars.

## IV.     CLASS ALLEGATIONS

26.     Plaintiff brings this action on behalf of himself and all other similarly situated persons as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

27.     **CLASS DEFINITION.** There are two classes or sub-classes, defined as follows:

### A.     THE ILLEGAL PENALTIES CLASS

*All of Defendant's California tenants who were charged penalties
or fees for paying rent or other charges Defendant deemed as late
or deficient.*

### B.     THE SECURITY DEPOSIT CLASS

*All of Defendant's California tenants whose security deposits were not returned
within 21 days of move-out or had deductions without corresponding itemized
statements or receipts.*

28.     Plaintiff reserves the right to amend the above class definitions and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29.     **NUMEROSITY:** The potential members of each these Classes as defined are so numerous that joinder of all the members is impracticable. While the precise number of Class members has not been determined, it is currently believed to number into the thousands. Plaintiff is informed and believes that Defendant has access to data sufficient to identify all Class members and all relevant charges.

30.     Plaintiff is informed, believes, and on that basis alleges that Defendant's records would provide information as to the number, identity, and location of all Class members.

31.     **ADEQUACY OF REPRESENTATION:** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the classes defined above. Plaintiff is a member of both classes.  Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the class and individual Plaintiff. Plaintiff's attorneys are highly experienced in consumer class action litigation. Plaintiffs intend to prosecute this action vigorously.

32.     **COMMON QUESTIONS OF LAW AND FACT:** Common questions of law and fact concerning these claims predominate over any individual questions.  Those common questions include:

a.     What Defendant's late fee penalties are;

b.     Whether any damages actually felt by Defendant as a result of late rent are truly impracticable or extremely difficult to calculate;

c.     How Defendant set its standard late fee amount ($100) and whether it actually tried to calculate whether it would represent fair compensation for the loss sustained;

d.     Whether Defendant's conduct violates law or public policy in California;

e.     Whether Defendant has violated the laws asserted here;

f.     Whether Plaintiff and the Classes may recover monetary damages;

CLASS ACTION COMPLAINT

g.     Whether Plaintiff and the Classes may obtain an order of restitution;

h.     Whether Plaintiff and the Classes may obtain declaratory relief; and

i.     Whether Plaintiff and the Classes may obtain injunctive relief.

33.    **TYPICALITY:** The claims of the named Plaintiff are typical of the claims of all members of the Classes because, for example, Defendant charged everyone the same penalty for the same reasons (or lack thereof).

34.    **SUPERIORITY OF A CLASS ACTION:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Classes predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a class action.

## V.    FIRST CAUSE OF ACTION

**(Imposition of an Illegal Penalty – Cal. Civ. Code § 1671)**
**(By Plaintiff on behalf of himself and the Illegal Penalties Class, Against Defendant)**

35.    Plaintiff incorporates by reference each and every allegation contained above.

36.    Defendant rented real property to Plaintiff and Class members for use as dwellings by Plaintiff, Class members, or those dependent upon Plaintiff or Class members for support, pursuant to California Civil Code section 1671(c)(2).

37.    California Civil Code section 1671(d) provides that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

38.    During all relevant times, on information and belief, any actual damages Defendant sustained because of Plaintiff's and Class members' late payment of rent or other

1   outstanding balance amounts are neither impracticable nor extremely difficult to fix.  Nor is

2   Defendant's late rent fee scheme the result of a reasonable effort to estimate fair compensation

3   for Defendant's actual damages sustained, if any, due to its late receipt of rent or other

4   outstanding balance amounts from Plaintiff or Class members.

5        39.     Defendant's late rent penalties are accordingly unlawful pursuant to California

6   Civil Code section 1671(d). Plaintiff and Class members are entitled to a return or restitution of

7   all fees Defendant has collected from tenants for the late payment of rent or other outstanding

8   balances, as well as interest and other relief as specifically prayed for here.

9                    **VI.    SECOND CAUSE OF ACTION**

10       **(Illegal Deductions from Security Deposits – Cal. Civ. Code § 1950.5)**
     **(By Plaintiff on behalf of himself and the Security Deposit Class, Against Defendant)**

11

12       40.     Plaintiff incorporates by reference each and every allegation contained above.

13       41.     Pursuant to Civil Code section 1950.5(g)(1), within "21 calendar days after the

14   tenant has vacated the premises… the landlord shall furnish the tenant, by personal delivery or by

15   first class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the

16   amount of, any security received and the disposition of the security and shall return any remaining

17   portion of the security to the tenant."  If a repair to be done "by the landlord or the landlord's

18   employee cannot reasonably be completed within 21 calendar days," the landlord may furnish a

19   "good faith estimate of the charges" with the itemized statement.  (Civ. Code, § 1950.5(g)(3).)

20       42.     Defendant violated Civil Code section 1950.5(g)(1) by engaging in a pattern or

21   practice of wrongfully and in bad faith failing to furnish former tenants with an itemized

22   statement indicating the basis for and amount of security deposit to be withheld within 21 days

23   after those tenants vacate the premises.  Defendant has also engaged in a pattern or practice of

24   failing to refund any remaining portion of the tenant's security deposit within 21 days after the

25   tenant vacates the premises.

26       43.     Defendant's course of conduct described above injured Plaintiff and the members

27   of the Security Deposit Class making Defendant liable for actual damages they caused.

28   ///

44.     Plaintiff and the Security Deposit Class further allege that Defendant acted in bad faith towards Plaintiff and his fellow Security Deposit Class members within the meaning of Civil Code section 1950.5(l), entitling Plaintiff and his fellow class members to statutory damages of up to twice the amount of their security deposits in addition to actual damages, plus interest on the amount of security deposit wrongfully withheld.

## VII.     THIRD CAUSE OF ACTION

**(Violation of California's Unfair Competition Law –
Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
(By Plaintiff on behalf of himself and all Classes, Against Defendant)**

45.     Plaintiff incorporates by reference each and every allegation contained above.

46.     California Business and Professions Code section 17200, *et seq.*, prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices. Defendant's policy and practice of imposing and collecting excessive late rent penalties from Plaintiff and Class members constitute unlawful acts and practices prohibited by California Civil Code section 1671 and, as such, are also prohibited by the UCL (Cal. Bus. & Prof. Code §§ 17200-17208).   Defendant's policy and practice of failing to pay back security deposits in a timely fashion or with the requisite evidence to support deductions is likewise prohibited by the California Civil Code and, as such, also prohibited by the UCL.

47.     Separately, Defendant's policy and practice with respect to imposing excessive late fees and its policies and practices regarding tenant security deposits are also "unfair" because they have a great and deleterious effect on its victims (including Plaintiff, the Classes, and competitors) and they have no legal justification. Defendant's motives in imposing these fees and mistreating tenant deposits are driven purely by anticipated profits and without regard to their legality.  The practices are also penal in nature and violate the public policies embodied in California Civil Code sections 1671 and 1950.5.

48.     Further, on information and belief, Defendant intentionally applies California tenant's rent payments to their previously recorded debt first (including the assessed penalties and fees), rather than the rent due for the month in which payment is actually made.  Unless a California Class member takes that into account in making their rent payment, Defendant

CLASS ACTION COMPLAINT

considers that month's "rent" as not paid in full and then assesses another late rent penalty despite tenants' full and timely monthly rent payment.  As a result, Defendant charges a late fee of at least $100 on a balance that may be only $100 to begin with, or even smaller.  As a result, tenants incur repeated late penalties.  This happened to Plaintiff and his fellow class members, and Defendant's only purpose in doing this is to unduly penalize California tenants, not actually provide for any damages suffered by Defendant. The practice of charging late fees on outstanding late fees and other balance amounts other than the monthly rent itself is an also an unfair and illegal business practice no different than the "pyramiding" of late fees by banks that has long been found to be unlawful.

49.    In addition, insofar as Defendant is stacking or pyramiding late fees, that practice itself violates the same public policies embodied in section 1671, as well as those policies embodied in the FTC Act, Section 5 (*i.e.*, 15 U.S.C. 45—which prohibits unfair methods of competition).[1] Additionally, Defendant's business practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. Indeed, these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also to ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

50.    Plaintiff and all Class members have suffered injury in fact and lost money or property pursuant to California Business and Professions Code section 17204 as a result of Defendant's unlawful and/or unfair business acts or practices.

51.    As a result of these unlawful business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff and all similarly situated tenants and former tenants in California. Plaintiff and all Class members are therefore entitled to an order of

---

[1] Pyramiding, in the context of lending, is listed expressly as an example of an unfair act or practice within the meaning of the FTC Act.  *See* 12 C.F.R. 535.4.

restitution requiring Defendant to restore to Plaintiff and Class members the money which Defendant has acquired by means of its unlawful and unfair business acts and practices, including excessive late rent penalties, and wrongfully withheld security deposits, with accrued interest.  All such remedies are cumulative of relief available under other laws, pursuant to California Business and Professions Code section 17205.

52.     Plaintiff also seeks an injunction.  Pursuant to the UCL, Plaintiff, all class members, and the general public are entitled to injunctive relief against Defendant's ongoing continuation of such unlawful business practices.

53.     If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff and the general public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain at this time.

54.     Plaintiff has no plain, speedy, and adequate remedy at law.

55.     Defendant, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the class, and of the general public.

56.     Finally, the success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.  Thousands of individuals in California rent apartments from Defendant and are subject to Defendant's unlawful late fee and security deposit policies. Private enforcement of these rights is necessary as no public agency has pursued enforcement.  There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiff is therefore entitled to an award of attorney's fees and costs of suit pursuant to California Code of Civil Procedure Section 1021.5.

## VIII.   FOURTH CAUSE OF ACTION

**(Unjust Enrichment/Quasi-Contract)**
**(By Plaintiff on behalf of himself and all Classes, Against Defendant)**

57.     Plaintiff incorporates by reference each and every allegation contained above.

58.     Plaintiff brings this claim individually and on behalf of the members of all Classes.

59.     Plaintiff and his fellow Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged and by remitting security deposits that were improperly withheld.

60.     During all relevant times, any actual damages Defendant sustained as a result of Plaintiff and California Class members' late payment of rent or other outstanding balance amounts are neither reasonable in the light of the anticipated or actual harm caused by late payment of rent, nor is the actual injury or loss difficult to fix, as required by California law. Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to any late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. As such, Defendant's late fee scheme amounts to an unlawful penalty.

61.     Moreover, Defendant has wrongfully retained security deposit funds to which it has no entitlement and which now represent a complete and illegal windfall for Defendant at Plaintiff's and all class members' expense.

62.     Defendant has thus been unjustly enriched in retaining the revenues derived from Plaintiff and his fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and all class members.   Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees or withhold those deposit funds. Defendant's retention of those monies has caused injuries to Plaintiff and members of all classes.

63.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and his fellow class members is unjust and inequitable, Defendant must pay restitution

to Plaintiff and the California class members for Defendant's unjust enrichment, as ordered by the Court.

## IX.   FIFTH CAUSE OF ACTION

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff on behalf of himself and the**
**Illegal Penalties Class, Against Defendant)**

64.   Plaintiff incorporates by reference each and every allegation contained above.

65.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate the law.

66.   An actual, present, and justiciable controversy exists between Plaintiff and the Illegal Penalties Class members and Defendant concerning their respective rights and duties. Plaintiff alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions constitute appropriate or legal "liquidated damages."

67.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under California law that must be voided, and all fees collected returned.

68.   The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its $100 late fees from renters consistent with California law and also stopping the illegal stacking or pyramiding of fees for the purpose of generating further late penalties. If an injunction is not issued, Plaintiff and the Illegal Penalties Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff and the Illegal Penalties Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

69.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Defendant from illegally

CLASS ACTION COMPLAINT

1  collecting millions in late fees from the large number of California citizens who rent homes from

2  Defendant.

### X.      REQUEST FOR JURY TRIAL

4       Plaintiff hereby requests a trial by jury.

### XI.      PRAYER FOR RELIEF

6       Plaintiff prays for judgment against Defendant, as follows:

7       1.      That the Court determine that this action may be maintained as a class action

8              under Federal Rule of Civil Procedure 23, and define the Classes as requested

9              above;

10      2.      That the Court find and declare that Defendant's late fees and policy and practice

11             of assessing such late fees against Plaintiff and Class members are unlawful;

12      3.      For compensatory damages according to proof;

13      4.      For disgorgement of all monies which Defendant has illegally gained;

14      5.      For restitution according to proof at trial;

15      6.      For an order enjoining Defendant from any further illegal acts and practices with

16             respect to the late rent penalty and security deposit withholdings;

17      7.      For statutory penalties as identified herein;

18      8.      For pre-judgment interest;

19      9.      For costs of suit;

20      10.     For reasonable attorneys' fees; and

21      11.     For such other and further relief as this Court may deem just and proper.

22  Respectfully submitted:

23  DATED:   October 9, 2020                    **NICHOLAS & TOMASEVIC, LLP**

                                         By:      */s/ Alex Tomasevic*
24                                                Craig M. Nicholas
                                                  Alex Tomasevic
25                                                Ethan T. Litney
                                                  Email: cnicholas@nicholaslaw.org
26                                                Email: atomasevic@nicholaslaw.org
                                                  Email: elitney@nicholaslaw.org
27
                                                  Attorneys for Plaintiff
28