UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY ZEFF,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC,<br><br>　　　　　Defendant. | Case No.  20-cv-07122-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 16 |

Plaintiff Zachary Zeff has filed a putative class action against Defendant Greystar Real Estate Partners, LLC ("Greystar"), alleging that Greystar charges its tenants illegal late-fee penalties for late rent and utility payments and unlawfully withholds tenants' security deposits beyond 21 days of move-out.  Plaintiff alleges a violation of, *inter alia*, California Civil Code §§ 1671 and 1950.5, and California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).  Plaintiff seeks compensatory damages and restitution for the money Greystar has unlawfully withheld, and a declaratory judgment that Greystar's late-fee penalties and security deposit practices are unlawful.  Defendant has filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) for failure to state a claim and failure to join a necessary party under Rule 19.  Docket No. 16 ("MTD").   For the reasons set forth below, the Court **DENIES** Defendant's Motion to Dismiss.

## I.　　BACKGROUND

A.　Factual Allegations in Plaintiff's Complaint

Greystar is the largest owner, manager, and operator of apartments in the U.S.  Compl. ¶ 9.

United States District Court
Northern District of California

It owns, manages, and operates thousands of apartment units in California, including at least 79 large apartment communities in the Bay Area. *Id.* Plaintiff Zachary Zeff was a tenant at a Greystar apartment community in San Rafael, California. *Id.* ¶ 15. While a tenant, Plaintiff was subject to Greystar's unlawful late penalty scheme. *Id.*

1.    "Stacking" Scheme

Plaintiff alleges that Greystar operates a "stacking" scheme. Plaintiff describes the scheme as follows. First, Greystar mandates a $100-per-occurrence late rent penalty, which it automatically imposes the minute it deems rent late. *Id.* ¶ 10. Second, Greystar insists that utility payments (*e.g.*, for gas and electricity) be paid to the utility provider using Greystar's payments platform, and Greystar tacks on a $3.95 monthly administration fee. *Id.* ¶ 11. Greystar's policy and practice is to categorize the utility fees, as well as the $3.95 administration fee, as "rent" which generates its own $100 penalty fee for late payment. *Id.* ¶ 12.

In so doing, Greystar unilaterally expands the definition of "rent," because the lease which Plaintiff signed defines "rent" as merely the base rent for occupying the unit. *Id.* It is through this unilateral expansion of the term "rent" that Greystar subjects tenants to a "stacking" scheme. *Id.* ¶¶ 12-13. If any portion of the "rent" (*e.g.*, the water bill or the $3.95 administration fee) is not paid on time, Greystar adds a $100 "late rent" penalty. *Id.* ¶ 13. Stacking then happens when that $100 late penalty is not paid off by the following month, even when a tenant makes all other rent payments on time (*e.g.*, a tenant could be on-time with February base rent, utilities, and the administration fee, but still technically "late" on rent because the $100 late penalty from January was not paid in full). *Id.* This occurs because Greystar intentionally applies a tenant's rent payments to their previously recorded debt (*i.e.*, the previously assessed penalties and fees) first, rather than the rent that is due for the month in which a payment is actually made. *Id.* ¶ 48.

Plaintiff alleges that he experienced this stacking scheme firsthand. For instance, Plaintiff paid his May base rent on time, but did not pay his utilities and the $3.95 administration fee on time. *Id.* ¶ 15. As a result, Greystar tacked on the standard $100 late penalty. *Id.* The next month, Plaintiff again paid his base rent on time, but he was unable to bring his Greystar balance back to zero after accounting for utility fees, the $3.95 administration fees from both months, and

United States District Court
Northern District of California

the prior late penalty assessment of $100.  *Id.* ¶ 16.  Greystar tacked on another late fee penalty. *Id.*  Plaintiff alleges that Greystar created a "shortfall" on his account by virtue of its accounting practices.  *Id.* ¶ 15.  Namely, because Greystar applied Plaintiff's rent payment first to the accrued fees, and not his current rent, Plaintiff was caught in an endless cycle of "stacked" $100 penalties. *Id.* ¶ 16.  The stacking policy therefore creates multiple late charges based on a single original payment.  *Id.* ¶ 24.

Plaintiff alleges that Greystar's penalties—both the $100 late fee itself, and the $100 fee when combined with the stacked fees and/or additional fees—are arbitrary amounts which function as illegal penalties.  *Id.* ¶ 21.

> 2.   <u>Security Deposits</u>

Next, Plaintiff alleges that Greystar unlawfully withheld Plaintiff's security deposit. Plaintiff made a $700 security deposit, and Greystar unlawfully returned that deposit more than 21 days after Plaintiff vacated the premises, and without any documentation (*e.g.*, repair bills or receipts) for the $127 deduction it took from that deposit.  *Id.* ¶ 18 (citing Cal. Civ. Code § 1950.5 ("[n]o later than 21 calendar days after the tenant has vacated the premises … the landlord shall furnish the tenant … a copy of an itemized statement indicating … the disposition of the security, and shall return any remaining portion of the security to the tenant")).  Greystar's refusal to timely refund security deposits, and its unilateral deductions from those deposits, has cost putative class members millions of dollars in the aggregate.  Compl. ¶ 25.

B.   <u>Class Allegations</u>

Plaintiff brings this putative class action pursuant to Federal Rules of Civil Procedure 23(b)(1), (b)(2), and (b)(3).  *Id.* ¶ 26.  Plaintiff proposes the following two sub-classes:

> **"A. THE ILLEGAL PENALTIES CLASS**
>
> All of Defendant's California tenants who were charged penalties or fees for paying rent or other charges Defendant deemed as late or deficient.
>
> **B. THE SECURITY DEPOSIT CLASS**
>
> All of Defendant's California tenants whose security deposits were not returned within 21 days of move-out or had deductions without corresponding itemized statements or receipts."

*Id.* ¶ 27.  Plaintiff does not provide the size of the class but estimates that it is "into the thousands." *Id.* ¶ 29.

C.  Defendant's Arguments for Dismissal Under Rule 12(b)(7)

Greystar states that Plaintiff entered into a lease with his landlord, Bel Albert Holdings, LLC ("Bel Albert"), and Greystar was not a party to that contract.  MTD at 1.  *See also* Docket No. 16-1, Ex. A, Lease Contract, § 1 ("Parties") (describing the parties to the Lease Contract as Zachary Zeff and Bel Albert Holdings, LLC) (hereinafter "Lease Contract").  Greystar alleges that Bel Albert is the party who owns the property where Plaintiff lived, and that Bel Albert was paid all rents and fees.  MTD at 1.  As a result, Plaintiff cannot pursue his claims, either individually or on a class-wide basis, without naming Bel Albert as a party to this suit.  *Id.*

Greystar contends specifically that Bel Albert is a necessary party under Rule 19.  It asserts several reasons.  First, Bel Albert has a legally protected interest in this suit that will be impaired or impeded if it is not joined.  Reply at 5.  Second, the Court cannot accord complete relief among existing parties, because Bel Albert could frustrate any relief which Plaintiff obtains by replacing Greystar with another property management company to enforce the late fee provision at issue. *Id.* at 6.  Third, Bel Albert's absence exposes the existing parties to the risk of multiple or inconsistent obligations, because Bel Albert could institute a separate action against Greystar seeking a declaration that the late fee provision in its lease is not void.  *Id.* at 6-7.  Because it is feasible to join Bel Albert as a party to this action, Greystar asks the Court to dismiss Plaintiff's complaint without prejudice so he can amend his complaint to add Bel Albert as a defendant.  *Id.* at 7.  Further, Greystar argues that Bel Albert is an indispensable party under Rule 19(b) and that the case cannot proceed without it, because cases arising out of a contract cannot proceed without the contracting parties.  *Id.*

## II.   DISCUSSION

A.  Rule 19

Federal Rule of Civil Procedure 19(a) provides:

> "(1) … [a] person who is subject to service of process and whose
> joinder will not deprive the court of subject-matter jurisdiction must
> be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19.  Joinder under Rule 19(a)(1)(B) is contingent upon "an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (emphasis in original) (internal citation omitted).  *Cf. Ward v. Apple Inc.*, 791 F.3d 1041, 1051 (9th Cir. 2015) (noting *Bowen*'s requirement that an absent party claim a legally protected interest in the action and holding "[e]ven if we assume that ATTM's [the absent third party's] attorney … was authorized to assert [its] interests in this litigation, [Defendant] has not shown that the interests ATTM has purportedly claimed are legally protected under Rule 19").  "'[I]t is inappropriate for one defendant to attempt to champion [the] absent party's interests.'"  *Bowen*, 172 F.3d at 689 (citing *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994)).

Here, Bel Albert has not claimed any such interest in this action.  Hence, joinder under Rule 19(a)(1)(B) is not required.

B.    Bel Albert's Status Under Rule 19

Even if Bel Albert had claimed a legally patented interest in this litigation, joinder would not be required.  First, Bel Albert is not a necessary party under Rule 19(a)(1)(A), because the Court can "accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Plaintiff alleges that "Greystar owned, managed, and operated Plaintiff's apartment."  Compl. ¶ 9.  Plaintiff can obtain complete relief against Greystar because as the manager who allegedly engaged directly in the wrongful acts, it is jointly and severally liable for those wrongful acts.  *C. B. v. City of Sonora*, 769 F.3d 1005, 1031 (9th Cir. 2014) ("California Civil Code section 1431.2(a) provides

that liability for economic damages is joint and several, but liability for noneconomic damages is apportioned according to the principles of comparative fault").  The Court can enjoin Greystar from any further collection of illegal fees and retention of security deposits.

Greystar contends that, if the Court only enjoined Greystar from collecting the late fee in Plaintiff's Lease Contract, Bel Albert can simply replace Greystar with another property management company to enforce the late fee provision.  Reply at 6.  However, the "complete relief" principle in Rule 19(a)(1)(A) has been construed narrowly, *i.e.*, joinder has only been found to be required where:

> nonjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties*.  In other words, joinder is required only when the absentee's nonjoinder precludes the court form rendering complete justice *among those already joined*. . . . Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation.  The effect of a decision in the present case on the absent party is immaterial under the "complete relief" clause.  The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief.  The "complete relief" clause does not contemplate other potential defendants, or other possible remedies.

Moore's Fed. Prac. – Civ. § 19.03[2][b][ii] (emphasis in original).  Here, Plaintiff consciously chose not to include Bel Albert in the litigation, and challenges Greystar's stacking practices, which operate independently of the Lease Contract which Plaintiff signed with Bel Albert.  Plaintiff need not name every possible defendant and can fully obtain the relief he seeks in the instant action, even if that relief might later be frustrated.

Further, under Rule 19(a)(1)(B), Bel Albert does not have a legally protected interest in this suit.  As noted in *Ward*, generally joint tortfeasors and co-conspirators need not all be joined in the same lawsuit.  *Ward*, 791 F.3d at 1048.  There is an exception where the absent party asserts contract interests, in which case the "absent party's contract rights may give it a legally protected interest in an action."  *Id.* at 1053.  Not only has Bel Albert failed to assert such an interest here, but the contractual obligations at jeopardy must be "substantial" in order to provide a basis for joinder.  *Id.* (citing *Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005)).  *Cf. Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002) (holding that the absent Indian tribes were necessary parties where "the interest of the tribes arises from terms in bargained contracts,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *and the interest is substantial*") (emphasis added); *Cachil Dehe Band of Wintun Indians v.*

2  *California*, 547 F.3d 962, 970 (9th Cir. 2008) (interpreting *American Greyhound Racing, Inc.* to

3  require that "an interest that arises from terms in bargained contracts may be protected, but …

4  such an interest [must] be *substantial*") (emphasis added) (internal quotation marks omitted).  For

5  instance, "a party to a contract is necessary, and if not susceptible to joinder, indispensable to

6  litigation seeking to *decimate* that contract."  *Wilbur*, 423 F.3d at 1113 (emphasis added).  Joinder

7  is not required where the relief sought "merely implicates an absent party's contract rights."

8  *Ward*, 791 F.3d 1053.  *See also Cachil Dehe Band of Wintun Indians*, 547 F.3d at 970 ("an interest

9  that arises from terms in bargained contracts *may* be protected") (emphasis added) (internal

10  quotation marks omitted).

11       Here, the only provisions of the Lease Contract that would be invalidated are the flat $100

12  late fee and Greystar's practice of first applying a tenant's rent payment to the accrued amount

13  owed, and the latter is not found in the text of the Lease Contracts which tenants sign with Bel

14  Albert.  Invalidation of these provisions would not "decimate" the contract.  The challenged fee, in

15  the context of the entire contract, is relatively minor.  "[T]he [legally protected] interest must be

16  more than a financial stake."  *Ward*, 791 F.3d at 1051.

17       Even if the Court were to assume that Bel Albert did have such a sufficiently protected

18  interest at stake, that interest would not be impaired by this litigation.  Where the absent party is

19  not bound by the litigation, the Court must "assess how [their] interests may be impaired when, as

20  a non-party, the outcome of the action will not bind the absent party in future proceedings."  *Id.* at

21  1049-50 (finding that the District Court abused its discretion by failing to analyze how the

22  interests of ATTM, the absent party, "might be impaired if the action were resolved in its

23  absence").  Greystar has failed to demonstrate any such impairment, because Bel Albert would not

24  be bound by any judgment which the Court issued.  This case is not like the paradigm of Rule 19

25  joinder, where a judgment that is dipositive of a specific res would bind the absent party's interest

26  in that res as a practical matter.  *See*, *e.g.*, *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326-27

27  (9th Cir. 1975) (finding that the Hopi Tribe of Arizona is a necessary and indispensable party to a

28  third-party suit seeking invalidation of a lease between the Tribe and the Peabody Coal Company

1    for a res, *i.e.*, a strip of land).

2        The Court thus finds that Bel Albert is not a necessary party under Rule 19, and it denies

3    Greystar's Motion to Dismiss under Rule 12(b)(7).

4    C.    Plausibility of Plaintiff's Claims

5        The Court next turns to Defendant's Motion to Dismiss under Federal Rule of Civil

6    Procedure 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a

7    short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

8    P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule

9    of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to

10   dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell*

11   *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the

12   complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v.*

13   *Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the

14   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

15   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But

16   "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must

17   contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

18   party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).

19   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

20   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

21   U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for

22   more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks

23   omitted).

24       1.    California Civil Code § 1671

25       First, Plaintiff alleges that Greystar's stacking scheme – in particular the $100 late fee –

26   violates California Civil Code § 1671.  *Id.* ¶¶ 35-39.  This section of the Civil Code regulates

27   liquidated damages provisions for breach of contract.  Liquidated damages are defined as "an

28   amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed

United States District Court
Northern District of California

1  and certain by agreement." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (internal

2  citation omitted).  § 1671(c) provides, in relevant part, as follows:

> "[t]he validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from … [a] party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support."

6  Cal. Civ. Code § 1671(c).  § 1671(d), in turn, provides as follows:

> "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

11  Cal. Civ. Code § 1671(d).  Liquidated damages in rental agreements are presumptively void, and

12  the proponent of such damages has the burden of proof in showing their lawfulness.  *Id.  See also*

13  *Ubaldi v. SLM Corp.*, No. 11-01320 EDL, 2014 U.S. Dist. LEXIS 38587, at *40 (N.D. Cal. Mar.

14  24, 2014) ("[u]nder section 1671(d), unlike section 1671(b), the proponent of the liquidated

15  damages clause has the burden of proof") (internal quotation marks omitted).  To state a plausible

16  claim that liquidated damages are void under § 1671, Plaintiff "must allege that the imposition of

17  the liquidated damages provision arises from a breach of contract and that the liquidated damages

18  amount is a fixed and certain sum." *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d

19  1062, 1090 (C.D. Cal. 2010).

20       Courts have developed a two-part test to determine whether a liquidated damages

21  provision is valid: "(1) fixing the amount of actual damages must be impracticable or extremely

22  difficult, and (2) the amount selected must represent a reasonable endeavor to estimate fair

23  compensation for the loss sustained." *Cellphone Termination Fee Cases,* 193 Cal. App. 4th 298,

24  322, 122 Cal. Rptr. 3d 726, 747 (2011) (citing *Util. Consumers' Action Network, Inc. v. AT&T*

25  *Broadband of S. Cal., Inc.*, 135 Cal. App. 4th 1023, 1029, 37 Cal. Rptr. 3d 827, 832 (2006)).

26  However, a liquidated damages provision "need not … be expressly negotiated by both parties to a

27  form contract in order to be valid." *Cellphone Termination Fee Cases,* 193 Cal. App. 4th at 322.

28       With respect to the first prong, "[i]mpracticability may be established by showing that the

1  measure of actual damages would be a comparatively small amount and that it would be

2  economically impracticable in each instance of a default to require a seller to prove to the

3  satisfaction of the consumer the actual damages by accounting procedures." *Id.* (internal citation

4  omitted).

5      With respect to the second prong, the California Second District Court of Appeal holds as

6  follows:

7      "[d]etermining whether a reasonable endeavor was made depends
       upon both (1) the motivation and purpose in imposing the charges,
8      and (2) their effect. If the amount selected is designed to
       substantially exceed the damages suffered, and its primary purpose
9      is to serve as a threat to compel compliance through the imposition
       of charges bearing little or no relationship to the amount of actual
10     loss, then the purported liquidated damages provision is an invalid
       attempt to impose a penalty."

11

12  *Utility Consumers Action Network*, 135 Cal. App. 4th at 1029.  In other words, under the second

13  prong, the party seeking to impose liquidated damages is "required to show that it actually

14  engaged in some form of analysis to determine what losses it would sustain from breach, and that

15  it made a genuine and non-pretextual effort to estimate a fair average compensation for the losses

16  to be sustained."  *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 291, 44 Cal. Rptr. 2d 890,

17  901 (1995).  Thus, the two-part test is conjunctive rather than disjunctive (*i.e.*, even if the damages

18  Greystar suffered from late fees were extremely difficult to calculate, Greystar must still show that

19  its $100 late-fee policy was part of an honest, non-pretextual effort to estimate the fair amount of

20  compensation for the losses it sustains).

21      In *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. 2015), the court found Plaintiff's

22  claims plausible under § 1671 even where the Defendant (Zipcar, a short-term auto rental service)

23  operated a *tiered* late-penalty scheme (rather than Greystar's flat scheme), with late fees varying

24  based on how late the car was returned.  *Id.* at 1254.  Plaintiff signed a Zipcar membership

25  agreement and was subject to a fee of $50 per hour, up to $150, for returning a car late.  *Id.*  As in

26  the present case, liquidated damages in rental car agreements are presumptively void.  *See* Cal.

27  Civ. Code § 1671(c)(1).  The District Court in *Zipcar, Inc.*, held that:

28      "[t]he terms of the late fee provision also suggest a *plausible*

United States District Court
Northern District of California

> *mismatch* with the damage Zipcar actually suffers. The minimum late fee is $50; this fee applies even where the car is returned an instant late, and no other reservations or operations are affected. On the other hand, the maximum fee is $150, even for a person who keeps a car out for 24 hours or more. It is plausible to conclude that Zipcar's actual damage in the former case is zero, and actual damage in the latter case is greater than the damage it suffers from a car being returned three hours late, which also incurs a late fee of $150. It may be that Zipcar arrived at these fees as a way to average out its damage over all late returners, but this mismatch at least makes Plaintiff's allegations plausible."

*Id.* at 1260 (emphasis added).

Accepting the allegations in the complaint as true and construing all reasonable inferences in Plaintiff's favor, the Court finds that this logic applies to the instant case. Here, Greystar does not even attempt to institute the tiered scheme that Zipcar did. Specifically, Greystar does not attempt to differentiate between, *e.g.*, tenants with a $3.50 balance on their account ledger and those with a $1,000 balance, charging them both the $100 fee for late payment of rent. In fact, Greystar "uses an automated process to impose its late fees, and … its late fees are the same regardless of the amount of rent or the location of the home at issue," such that "the late fee is not a reasonable estimate of [Greystar]'s losses." Compl. ¶ 60. Greystar provides no calculation or methodological basis to justify the $100 late fee figure.[1]

The terms of Greystar's late fee provision therefore suggest a "plausible mismatch" with the damage it actually suffers. Further, as discussed *supra*, Greystar's liquidated damages provision is presumptively void, and Greystar has the burden of proof of showing its lawfulness. It has, thus far, failed to do so. Plaintiff has stated a plausible claim under § 1671. Plaintiff has plausibly alleged that Greystar's stacking scheme is an unlawful liquidated damage provision in violation of Civil Code § 1671.

---

[1] Even if Greystar can show that it is extremely difficult for it to calculate its actual damages when a tenant is late on a rent payment, the amount it selects must represent some reasonable endeavor to estimate fair compensation for the losses it sustained. *Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 322. The bar for the "reasonable endeavor" requirement appears to be low. For instance, the District Court in *Zipcar, Inc.* held that "[a] company could reasonably consider several factors in setting a late fee besides estimating their actual damage, such as the likelihood of deterring late returns, or the opportunity to generate income from customers' tardiness," and found no indication that Zipcar had considered such factors. *Zipcar, Inc.*, 78 F. Supp. 3d at 1259. Here, as well, Greystar does not point to any factors which it considered when setting its $100-per-instance late fee as compensation for the losses it suffers when rent is paid late.

United States District Court
Northern District of California

United States District Court
Northern District of California

2.     California Civil Code § 1950.5

Plaintiff alleges a violation of California Civil Code § 1950.5(g)(1), which provides in relevant part:

> "[n]o later than 21 calendar days after the tenant has vacated the premises … the landlord shall furnish the tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security, and shall return any remaining portion of the security to the tenant."

Cal. Civ. Code § 1950.5(g)(1). Plaintiff contends Greystar, as property manager, may be held liable for violation of the statute; even though Greystar is merely the property manager and not the "landlord," the legislature intended this section of the Civil Code "to be agnostic as to who or what receives [a] 'security.'" Opp. at 15.

Plaintiff relies on *Kraus v. Trinity Mgmt. Servs., Inc.*, 57 Cal. App. 4th 709 (1997) for the proposition that the term "landlord" in Civil Code § 1950.5 encompasses property management companies such as Greystar, and not just the owner Bel Albert. Plaintiffs in *Kraus* named two separate defendants: (1) Trinity Properties, which owned and leased residential rental properties throughout the City and County of San Francisco, and (2) Trinity Management Services, Inc., which managed and operated those properties. *Id.* at 716-17. It was the latter (Trinity Management Services, Inc.) which assessed a $100 non-refundable fee from every new tenant (referred to as the "TIER" fee). *Id.* at 717. There were two distinct questions which the appellate court had to decide in *Kraus*: (1) whether Trinity Management Services was not subject to § 1950.5 because it was a rental agency and not a "landlord," and (2) whether the non-refundable TIER fee qualified as a "security" under § 1950.5(b). *Id.* at 722-23.

Regarding the first question (whether Trinity Management was subject to § 1950.5 as the property manager), the appellate court held that "Section 1950.5 does not focus on who collects the security and does not, as defendants suggest, create any exception for entities who are not landlords. *Rather, so long as a fee collected from a tenant constitutes a security, the statute would then apply to anyone who collects the security*." *Id.* at 723 (emphasis added). Regarding the second question (whether the TIER fee is a security under § 1950.5), the court held "nothing in

United States District Court
Northern District of California

1  our review of … [the] legislative history contradicts our reading of section 1950.5's definition of

2  'security' as encompassing defendants' TIER charge."  *Id.* at 725.

3      The case was appealed to the California Supreme Court, which solely addressed the latter

4  question (*i.e.*, whether the non-refundable TIER fee qualifies as a "security" under § 1950.5(b)).

5  *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 139 (2000).  The Court held that a "security"

6  for purposes of § 1950.5 is "an amount intended to offset expenses incurred by the landlord as a

7  result of tenant conduct during the tenancy," and that a one-time fee imposed at the beginning of

8  the tenancy for administrative purposes is therefore not a security.  *Id.* at 140-41.  But, again, the

9  California Supreme Court did not disturb the lower court's finding that the provisions of §

10  1950.5(g)(1) apply to anyone who collects a tenant's security deposit.

11      Thus, any individual or entity who collects a security deposit from a tenant may be held

12  liable for violating the requirements of § 1950.5.  Plaintiff has stated a plausible claim under §

13  1950.5.

14          3.      Unfair Competition Law

15      The Court next examines whether a property manager may be directly liable, under the

16  UCL, for acts done to benefit the principal.  Greystar is the "managing agent" of the landlord, Bel

17  Albert.  MTD at 1.  "An agent is one who represents another, called the principal, in dealings with

18  third persons. Such representation is called agency."  Cal. Civ. Code § 2295.  Greystar can be held

19  liable under Civil Code § 2343 for "acts [which] are wrongful in their nature."  Cal. Civ. Code §

20  2343.  However, "acts [by agents] are wrongful [under § 2343] only if they are proscribed by

21  statute."  *See Otanez v. Blue Skies Mobile Home Park*, 1 Cal. App. 4th 1521, 1526, 3 Cal. Rptr. 2d

22  210, 213 (1991).  Thus, if a property manager is an agent, then they may be responsible to third-

23  party tenants for acts which are proscribed by statute.

24      That is especially clear with respect to violations of the UCL.  Normal agency theory

25  applies to UCL suits.  *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1242, 151 Cal. Rptr. 3d

26  728, 747-48 (2013) ("persons can be found liable for … unfair business practices under normal

27  agency theory").  To that end, the UCL broadly prohibits the use of any "unlawful, unfair or

28  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL's "unlawful"

13

prong "looks to other sources of substantive law … to proscribe the kinds of unlawful business practices punishable under the statute." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). For instance, in *Tarsadia Hotels*, the Ninth Circuit affirmed the district court's grant of partial summary judgment in favor of the buyers of non-residential condominiums who claimed that a group of developers *and their agents* violated the UCL by failing to make certain disclosures in the course of their sale transactions, as required by the Interstate Land Sales Full Disclosure Act (ILSA). *Id.* at 1188.

Plaintiffs state a plausible claim under the UCL's "unlawful" prong because, as discussed *supra*, they have already stated a plausible claim that Greystar violated Civil Code §§ 1671 and 1950.5 through unlawful late fee penalties and security deposit practices. Because Greystar's conduct allegedly violates these two provisions of the Civil Code, that same conduct suffices to state a plausible UCL claim under the "unlawful" prong. And, because Greystar's alleged wrongdoing is proscribed by these two statutes, they may be held liable for their "wrongful" conduct as an agent under Civil Code § 2343.

### 4. Unjust Enrichment/Quasi-Contract

Greystar is not a party to Plaintiff's contract with Bel Albert. MTD at 9. Plaintiff brings a fourth cause of action for unjust enrichment, under a quasi-contractual theory, because there is no enforceable agreement defining these parties' rights. Opp. at 17. The term "unjust enrichment," which is synonymous with "restitution," describes a theory "underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). There is no standalone cause of action for unjust enrichment in California. *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661, 124 Cal. Rptr. 3d 664, 675 (2011). However, "[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient." *Id. See also Fed. Deposit Ins. Corp. v. Dintino,* 167 Cal. App. 4th 333, 346, 84 Cal. Rptr. 3d 38, 49 (2008) ("the equitable remedy of restitution … is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money").

The complaint alleges that Plaintiff conferred benefits on Greystar by paying late rent

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1   penalties that were improperly charged and remitting security deposits that were improperly

2   withheld.  Compl. ¶ 59.  Plaintiff therefore alleges that Greystar has a quasi-contractual obligation

3   to restore these ill-gotten gains to Plaintiff and all putative class members.  *Id.* ¶ 62.  Because the

4   Court found that Plaintiff stated a plausible claim under Civil Code §§ 1671 and 1950.5, as well as

5   the UCL, the Court also finds that Plaintiff has stated a plausible claim under an unjust

6   enrichment/quasi-contractual theory.  If Greystar unlawfully charged late rent penalties and

7   withheld the security deposits of former tenants with whom it did not have a binding contract, then

8   Greystar also conferred a benefit "through mistake, fraud, coercion, or request."  *Astiana*, 783 F.3d

9   at 762.

10       Greystar counters that Plaintiff has failed to explain why it would retain revenues from late

11   penalties and security deposits when it is not a party to the Lease Contract.  MTD at 8-9.

12   However, at the pleading stage, the Court accepts Plaintiff's factual allegations as true, and

13   Plaintiff alleges that it was the agent Greystar—not the principal Bel Albert—which has retained

14   these revenues.  *See, e.g.*, Compl. ¶ 18 ("Plaintiff repeatedly requested documentation supporting

15   Greystar's deduction [from the security deposit].  Greystar has refused to comply *and continues to*

16   *hold onto Plaintiff's money to this day*") (emphasis added); ¶ 61 ("Defendant [*i.e.*, Greystar] has

17   wrongfully *retained* security deposit funds to which it has no entitlement and which now represent

18   a complete and illegal windfall for Defendant") (emphasis added).

19       Thus, Plaintiff's fourth cause of action also survives the Motion to Dismiss.[2]

20

21

22   ─────────────────────
[2] Plaintiff also seeks a declaratory judgment that Greystar's late fees are illegal penalties under

23   California law that must be voided, and all fees collected returned.  Compl. ¶ 67.  Under the
     Declaratory Judgment Act, the Court may issue an order "declar[ing] the rights and … legal

24   relations" of Plaintiff and Greystar.  28 U.S.C. § 2201.  But the Act "does not create an
     independent basis for subject matter jurisdiction … [for] [t]he Act is procedural and does not

25   extend the jurisdiction of the federal courts."  *Fazio v. Recontrust Co., N.A.*, No. C 13-554 MEJ,
     2013 U.S. Dist. LEXIS 67172, at *13 (N.D. Cal. May 10, 2013) (citing *Vaden v. Discover Bank*,

26   556 U.S. 49, 70 n.19, 129 S. Ct. 1262, 1278 (2009)).  Because the Act is procedural only and does
     not create an independent cause of action conferring subject matter jurisdiction, the Court need not

27   analyze the plausibility of Plaintiff's fifth cause of action.  The Court merely notes that, because it
     has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d),

28   it has the authority to enter an order granting declaratory relief if it finds in Plaintiff's favor on the
     merits.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Greystar's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).

This order disposes of Docket No. 16.

**IT IS SO ORDERED**.

Dated: February 18, 2021

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California