**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY ZEFF, an individual, on behalf of himself and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GREYSTAR CALIFORNIA, INC., a Delaware Corporation;<br><br>Defendant. | Case No. 3:20-cv-07122-EMC<br><br>**PLAINTIFF ZACHARY ZEFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**: December 19, 2024<br>**Time**: 1:30 p.m.<br>**Courtroom**: 5 – 17th Floor<br><br>**Judge**: Hon. Edward M. Chen<br><br>**FAC Filed**: August 24, 2021<br>**Trial Date**: Not Set |

TO DEFENDANT GREYSTAR CALIFORNIA, INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 19, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Zachary Zeff ("Plaintiff") will and hereby does seek an Order finally approving the parties' proposed class action settlement under Federal Rule of Civil Procedure 23 and this District's Procedural Guidance for Class Action Settlements.

Plaintiff moves the Court for an Order that grants final approval of the parties' proposed Settlement along with such other and further relief as the Court deems appropriate.

This Motion is based upon this Notice; the Memorandum of Points and Authorities in support thereof; the Declaration of Alex Tomasevic ("Tomasevic Decl."); the Declaration of Jazminee Shumway ("Shumway Decl."), the exhibits attached to such declarations; the files and records of the Court in this action; the arguments of counsel to be presented at the hearing; and such other information as the Court may find it appropriate to consider.

A proposed Order is submitted herewith.

Respectfully Submitted,

Dated: November 14, 2024

**NICHOLAS & TOMASEVIC, LLP**

By:     */s/ Alex Tomasevic*
_____
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff

PLAINTIFF ZACHARY ZEFF'S NOTICE OF MOTION AND
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................................................. 1

II.    **RELEVANT BACKGROUND** ......................................................................... 1

     A.     **Greystar and its Late Fee.** ................................................................. 1

     B.     **Procedural History.** ........................................................................... 3

     C.     **Counsels' Investigation and Discovery.** ......................................... 3

     D.     **The Settlement Discussions.** ............................................................ 5

III.    **OVERVIEW OF THE SETTLEMENT TERMS** ........................................... 6

IV.    **THE COURT APPOINTED ADMINISTRATOR SENT DIRECT NOTICE TO CLASS MEMBERS.  THUS FAR THERE ARE NO OBJECTORS** ...................................................................................... 7

V.     **FINAL APPROVAL IS WARRANTED HERE** ......................................... 8

     A.     **Legal Standard.** ................................................................................. 8

     B.     **The Class Was Adequately Represented.** ..................................... 9

     C.     **The Settlement Was Negotiated at Arm's Length and Was Reached Only After Years of Litigation.** ................................. 10

     D.     **The Settlement is Adequate Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and compared to the Results Achieved.** ......................................... 11

     E.     **The Proposed Settlement Compares Favorably to Other Comparable Cases.** ..................................................................... 13

     F.     **The Proposed Relief Distribution is Effective and Efficient.** .......... 15

     G.     **The Proposed Allocation Plan is Also Fair.** ................................. 15

     H.     **The Requests for Fees and Costs is Reasonable.** ......................... 15

         1.     *A Benchmark Fee of 25% of the Total Recovery is Reasonable Here.* ......................................................... 16

         2.     *Counsel's Lodestar Supports the Fee Request.* ................. 18

VI.    **THE COURT SHOULD ALLOW REIMBURSEMENT OF COSTS** ...... 20

VII.   **THE REQUESTED ADMINISTRATION COSTS ARE ALSO REASONABLE** ................................................................................. 21

1

**VIII.** **THE REQUESTED SERVICE AWARD IS REASONABLE** ..................................... 21

**IX.** **CONCLUSION** ........................................................................................................... 22

TABLE OF CONTENTS

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Alvarez v. Farmers Ins. Exchange*,
4
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ...................................................................18

5
*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................................................15
6

7
*Boyd v. Bank of Am. Corp.*,
    2014 WL 6473804 (C.D. Cal. 2014) ................................................................................18

8
*Briseno v. Henderson*,
9
    998 F.3d 1014 (9th Cir. 2021) ...................................................................................11, 16

10
*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) .................................................................16
11

*Chu v. Wells Farbo Invs., LLC*,
12
    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011)................................................22

13
*Class Plaintiffs v. Seattle*,
14
    955 F.2d 1268 (9th Cir. 1991).............................................................................................9

15
*Cleven v. Mid-Am. Apt. Communities, Inc.*,
    20 F.4th 171 (5th Cir. 2021)..............................................................................................12
16

17
*Dexter's, LLC v. Gruma Corp.*,
    2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) ........................................................8, 9, 15

18
*Elliott v. Rolling Frito-Lay Sales, LP*,
19
    2014 WL 2761316 (C.D. Cal. June 12, 2014)..................................................................16

20
*Fernandez v. Victoria Secret Stores, LLC*,
    2008 WL 8150856 (C.D. Cal. July 21, 2008) ..................................................................20

21
*Franklin v. Kaypro*,
22
    884 F. 2d 1222 (9th Cir. 1989)............................................................................................9

23
*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..................................................................21
24

25
*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
    511 P.2d 1197 (Cal. 1973)................................................................................................13

26
*Glass v. UBS Fin. Servs., Inc.*,
27
    331 F. App'x 452 (9th Cir. 2009) .....................................................................................18

28

*Graham v. Overland Sols., Inc.*,
  No. 10-CV-0672 BEN BLM,
  2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) .................................................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................16

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..............................................................................................20

*Harris v. Vector Marketing Corp.*,
  2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .....................................................................21

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (2011) .................................................10, 11, 15, 16, 17, 18, 20

*In re Cellphone Termination Fee Cases*,
  193 Cal. App. 4th 298 (2011) ...........................................................................................2

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................................18

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..........................................................................................12

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ......................................................................................10, 17

*Kang v. Wells Fargo Bank, N.A.*,
  2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ...................................................................19

*Lazarin v. Pro Unlimited, Inc.*,
  No. C11–03609 HRL,
  2013 WL 3541217 (N.D. Cal. July 11, 2013) ..................................................................19

*McLeod v. Bank of America*,
  2019 WL 1170487 (N.D. Cal. 2019) ................................................................................19

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................10, 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................................................8, 9

*Pederson v. Airport Terminal Servs.*,
  2018 WL 11354549 (C.D. Cal. Aug. 3, 2018) .................................................................10

TABLE OF AUTHORITIES

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................21

*Singer v. Becton Dickinson & Co.*,
    No. 08-CV-821-IEG (BLM),
    2010 WL 2196104 (S.D. Cal. June 1, 2010) .....................................18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................9, 10, 16, 21

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ......................................................19

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ...........................................................17

*Thieriot v. Celtic Ins. Co.*,
    2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011)..................21

*Uschold v. NSMG Shared Servs., LLC*,
    2020 WL 3035776 (N.D. Cal. June 5, 2020) .....................................19

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09–00261 SBA (EMC),
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................16, 17, 18

**STATUTES**

Cal. Civ. Code., § 1671(d)....................................................................2

**RULES**

Fed. R. Civ. P. 23 .............................................................................9, 15

1  **I.     INTRODUCTION**

2      Plaintiff Zachary Zeff is a former tenant at a California apartment managed by Defendant

3  Greystar California, Inc. (sometimes "Greystar"). Mr. Zeff alleged that Greystar charged him and

4  fellow consumers with unlawful penalties for late rent.  Greystar vigorously defended the case.

5  While class certification was being briefed, and with the help of an experienced mediator, the parties

6  reached a class wide settlement that this Court preliminarily approved on July 12, 2024. *See* Dkt.

7  No. 140.  Notice has gone out to the class as planned and now Mr. Zeff respectfully moves for final

8  approval of the settlement under Fed. R. Civ. P. 23(e).

9      The Settlement satisfies all criteria for final approval.  The Settlement is fair and reasonable

10  and provides a total, non-reversionary fund for Class Members of over $2.46 million, including all

11  alleged damages, attorneys' fees, litigation costs, costs of settlement administration, and a typical

12  representative enhancement award to Mr. Zeff for his efforts. As a result of this lawsuit, Greystar

13  has also recommended to the owners of the apartments it manages a late fee of no more than $50

14  going forward.

15      An objective evaluation of the settlement confirms that the relief negotiated at arms-length

16  is fair and reasonable.  The Parties reached the settlement only after a full day of mediation with the

17  Honorable Joel M. Pressman (Ret.). And the settlement provides Class Members with valuable relief

18  for their claims in terms of real money, not coupons or illusory equitable relief.  The relief also does

19  not require the submission of a claim.  Further, by settling now, Class Members will not have to wait

20  (possibly years, if ever) for relief, nor will they have to bear the risk of class certification being

21  denied or of Defendant prevailing at trial, or of recovering a smaller amount than obtained through

22  this settlement, possible appeals, etcetera. Accordingly, Mr. Zeff respectfully requests that the Court

23  enter an Order granting final approval of the Settlement.

24  **II.    RELEVANT BACKGROUND**

25      **A.    Greystar and its Late Fee.**

26      Greystar manages apartment homes in California. It offers "end-to-end property management

27  services." *See* Dkt. No. 115-1, Tomasevic Declaration in Support of Class Certification, Ex 2.

28  Defendant Greystar does not own its own properties, but rather, manages apartments owned by its

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

clients such as hedge funds, pension funds, and large financial institutions that have muti-family property interests in their investment portfolios, but who rely on Greystar for much of the day-to-day running of the properties. *See id.* ("representative clients").

Greystar typically uses written lease forms in California derived from the National Apartment Association's form lease. *See* Dkt. No. 115-2, Zachary Zeff Declaration in Support of Class Certification, Exs. A-C (the Zeff leases); Dkt. No. 115-1, Exs. 3-5 (additional sample leases). The leases include set fees for the late payment of rent. The leases couch the late fees as lawful "liquidated damages." Dkt. No. 115-2, Exs. A-C (the Zeff leases). The only late fee program at issue here is the flat $100 late fee at dozens of Greystar-managed California properties. *See* Dkt. No. 115-1, Ex. 7 (Greystar's Responses to Interrogatories at No. 1); *id.* at ¶ 23 & Ex. 8 (summarizing Greystar's data about its California apartments and late fee).

Plaintiff Zachary Zeff was a resident at a Greystar-managed property – "Lofts at Albert Park" in San Rafael, CA – from 2017 to 2020. Dkt. No. 115-1, Ex. 18. Per his leases, Mr. Zeff was subject to and charged several $100 late fees. *See*, *e.g.*, Dkt. No. 115-2, Ex. A at p. 1, § 6; Dkt. No. 115-2, ¶ 3; Dkt. No. 115-1, Ex. 18 (Mr. Zeff's tenant ledger).

Plaintiff alleges, in summary, that the $100 late fee is arbitrary, excessive, or otherwise unlawful under California Civil Code Section 1671(d). That Section states that late fee provisions in residential leases are presumed to be invalid unless the landlord can prove both that the costs arising from a late payment are "impracticable or extremely difficult to fix" and that the landlord selected the late fee only after a "reasonable endeavor" to approximate those costs. Cal. Civ. Code., § 1671(d); *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 326-27 (2011).

Plaintiff alleged that the $100 late fee here bears no reasonable relation to the alleged "damage" suffered by Greystar or its clients, if any, arising from waiting for the rent payment. Most of the time, Plaintiff posited, there is little or no damage from any late payments because the amounts due are usually paid within a couple of days of the due date. Moreover, neither Greystar nor its clients have allegedly ever attempted to conduct any analysis or "reasonable endeavor" to set the fee. Plaintiff further alleges that the $100 late fee was adopted – somewhat blindly – by property owners on Greystar's written recommendation, which included an assessment of market conditions

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and what the competition was doing, but *not* necessarily any analysis of the true damage, to the owners/landlords, of rent being late. Plaintiff alleges that Greystar, therefore, must return all the $100 late fees collected during the class period, but Plaintiff acknowledges that Greystar or the owners could be entitled to a "setoff" for any actual damage they can prove because of the late payment of rent.  Defendant denies all material allegations and has vigorously defended all claims.

**B.    Procedural History.**

Plaintiff filed this case, as a putative class action, in October of 2020.  Dkt. No. 1. Defendant moved to dismiss the complaint, in December of 2020, pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(7), and 12(e). Dkt. No. 16. Defendant argued, for example, that Plaintiff's claims under the California Civil Code must be dismissed because the Civil Code does not provide a private right of action for allegedly improper late fees.  Defendant also argued that the complaint should be dismissed in its entirety because Plaintiff failed to name the record owner of his apartment complex – a party that Greystar argued as "necessary" to the action under Fed. R. Civ. P. 19. *See* Dkt. Nos. 16 and 24. Stated differently, Greystar argued strenuously that this action could not proceed against it (the property manager) alone, but rather, that the record owners of the property (who were the counter parties to the leases) must be included. *Id.*  Based on the allegations at the time, the Court denied Greystar's motion in February of 2021.  Dkt. No. 28. Greystar answered the complaint in March of 2021 by denying all material allegations and asserting 31 affirmative defenses.  Dkt. No. 32.

The parties entered into a stipulated protective order to facilitate discovery, conducted discovery, and generally worked toward a contested class certification motion.  Plaintiff filed said motion for class certification in June of 2023 – which was partially briefed and pending when the parties agreed to go to mediation. *See* Dkt. No. 115.

**C.    Counsels' Investigation and Discovery.**

Prior to filing the suit, and continuing through the course of the litigation, Class Counsel conducted an extensive investigation into the factual and legal issues raised in this case. Tomasevic Decl., ¶ 24. These investigative efforts included reviewing publicly available information about Defendant and its clients, including other relevant lawsuits, searching for cooperating witnesses, and hours of talking with Defendant's current and former tenants and reviewing and analyzing their

circumstances and documents.    Class Counsel also thoroughly researched and analyzed the legal issues regarding all late fee claims, and Greystar's many defenses, including by studying similar cases against rental property owners or managers.  *Id.*

Moreover, the parties conducted significant discovery, making them well-informed about the relative strengths and weaknesses of their respective positions, and providing them with information needed to negotiate the proposed Settlement. The parties exchanged initial disclosures.   Then Plaintiff served and Defendant responded to multiple sets of written discovery requests, including Interrogatories and Document Requests – dozens of requests in total.   Greystar also initially produced over 18,000 pages of documents, plus electronic data. *Id.* at ¶ 25.

The parties fought over the scope of allowable discovery, sometimes needing the help of the Court. *Id.* at ¶ 26. For example, a key dispute arose regarding Greystar's obligation (or lack thereof) to produce documents and proprietary data that its clients (e.g. the record owners of the properties) had deemed confidential or otherwise undiscoverable. Many of Greystar's non-party clients lodged objections to Greystar disclosing or producing all documents and data Mr. Zeff requested, with some filing formal Motions for Protective Order to stop or to limit said discovery.  *See*, *e.g.*, Dkt. No. 65 (Motion for Third-Party Raintree Partners, LLC for Protective Order).   Resolving or otherwise litigating the objections of these third parties took many months and many letters, briefs, or stipulations filed with the Court. *See*, *e.g.*, Dkt. Nos. 61 (Order re discovery dispute), 63 (stipulation to allow nonparties BRE Silver MF North Hollywood CA LLC, Bre Silver MF Roosevelt CA LLC, and BPP Alphabet MF Sherman Circle LLC, more time to further meet and confer with Plaintiff and file a motion for protective order if necessary); 102 (same for non-parties MCREF DT Oakland, LLC, MCREF Kearny Mesa, LLC, MCREF DT Los Angeles, LLC, and Monrovia Apartment EPF I LLC). Eventually Plaintiff negotiated with each of the objecting third-party owners, and Greystar, and was able to resolve all objections – sometimes after the Court's assistance.  These third parties and/or Greystar then produced thousands of additional pages of documents plus electronic data concerning their California apartment home operations and finances. *Id*.

Once Plaintiff completed sufficient written discovery and received sufficient documents, he started deposing Greystar personnel. Prior to moving for class certification Plaintiff deposed two of Greystar's managers. *Id.* at ¶ 27.

For its part, Greystar served, and Plaintiff responded to 25 interrogatories, 107 requests for production, and 25 Requests for Admission. *Id.* at ¶ 28. Greystar also subpoenaed Plaintiff's parents. *Id.* As with Plaintiff's requests to Defendant, Defendant also contested the sufficiency of many of Plaintiff's or his parents' responses, causing the parties to litigate the sufficiency of the responses before our Honorable Magistrate. *See* Dkt Nos. 109-111 (Discovery Dispute Letter Briefs and resulting Discovery Order). Greystar eventually deposed Plaintiff, in-person, over the course of a full day in November of 2022. Tomasevic Decl., ¶ 28.

### D. The Settlement Discussions.

As mentioned, the parties conducted significant investigation and discovery, including third party discovery, and eventually Plaintiff filed his Motion for Class Certification. After Plaintiff filed his motion, the parties agreed to attend private mediation before a retired judge, the Honorable Joel M. Pressman of Judicate West. Tomasevic Decl., ¶ 29.

The parties exchanged additional data prior to mediation, then exchanged mediation briefs, and then attended a full day of mediation on January 22, 2024. *Id.* at ¶ 30. The case, however, did not settle that day. But the parties continued to negotiate on a class-wide basis thereafter with the assistance of Judge Pressman. The case settled only after Judge Pressman submitted a "mediator's proposal" to the parties to break their deadlock. The parties eventually accepted Judge Pressman's proposal. *Id.* The parties then negotiated a written class settlement and draft notice to the class. *Id.*

Plaintiff first moved for preliminary approval of the Settlement in May of 2024. Dkt. No. 131. In June, the Court ordered supplemental briefing about the value of the case and distribution of funds, among other things. *See* Dkt. No. 136. The Court also ordered that the parties make certain changes to the draft class notice. *Id.* The parties submitted a joint supplemental brief in support of preliminary approval in July of 2024, Dkt. No. 137, and then an amended Settlement Agreement, Dkt. No. 138. That final Settlement Agreement – the operative one – is re-submitted with this

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  Motion as Exhibit 1 to the Declaration of Alex Tomasevic.  *See also* Dkt. No. 138-2, Ex. 5. The

2  Court preliminarily approved the Settlement on July 12, 2024. Dkt. No. 140.

3  **III.    OVERVIEW OF THE SETTLEMENT TERMS**

4      The "Settlement Class" consists of Greystar-managed tenants in California who paid at least

5  one $100 late rent fee during the "Settlement Class Period" of October 13, 2016 through the date of

6  Preliminary Approval. Tomasevic Decl., Ex. 1 at I.J. & I.L. (Definitions). The class has 21,898

7  members. Shumway Decl., ¶ 6.

8      Per the settlement, Defendant will pay $2,467,238.40.  This includes an initial "Settlement

9  Fund," *id.* at I.P, plus additional amounts owed under the "Escalator" clause of the Settlement. *Id.*

10  at I.Q, VI.D.[1] This Settlement Fund will cover each class member's individual "Benefit Payment"

11  (described further below), plus cover Class Counsel's Costs of up to $15,000, Class Counsel's Fees

12  of up to 30.0% (although they only seek 25%), a class representative service award of up to $10,000,

13  and Settlement Administration Costs.  *Id.* at VI.D.; Tomasevic Decl., ¶ 31.

14      Regarding the individual Benefit Payment, the payouts to participating class members will

15  be a function of how many $100 late fees the class member paid during the class period.  The more

16  late fees paid, the higher the Individual Settlement Allocation.  The allocation will be done

17  proportionally.  More specifically, Greystar provided the Settlement Administrator with the list of

18  Class Members, their contact information, and the $100 late rent fees paid by each. The Settlement

19  Administrator will determine the amount of individual recovery from the pool of money left after

20  deductions for fees and expenses described above (the total "Restitution Award") for each

21  Settlement Class Member based proportionally on the number of $100 late rent fees paid by each

22  participating Class Member. *Id.* at VI.E.

23

24

25  [1] The initial "settlement fund" of $1.35 million was based on Greystar's data at the time, and shared
with Plaintiff, that showed about $3.5 million in total late fees charged at the relevant properties
26  during the Class Period.  When conducting further due diligence after preliminary approval,
however, Greystar discovered a data coding issue at some properties, that caused an undercounting
27  of some late fees.  Tomasevic Decl., ¶ 31.  The parties were able to check and re-check the data and
confirm all the late fees before class notice went out. *Id.* Data issues of this type happen, especially
28  when data covers tens of thousands of small transactions, at many distinct locations, over different
data platforms, spanning many years, and this is why, in part, the parties negotiated an Escalator
clause in the first place. *Id.*

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

As noted, this settlement is completely non-reversionary. As such, any settlement funds that are returned, such as checks not cashed 180 days after distribution, will be distributed equally among three proposed *cy pres* recipients: Bay Area Legal Aid, the Legal Aid Foundation of Los Angeles, and the Legal Aid Society of San Diego. Each of these non-profit organizations provides low-income clients with free civil legal assistance, including in consumer protection and landlord/tenant matters. The distribution among the three non-profits was also chosen to, in part, reflect the areas where Greystar tenants also tend to reside in California (i.e. distributed throughout Northern, Central, and Southern California). *Id.* at p.14; Tomasevic Decl., ¶ 32.

Lastly, under the settlement, Greystar has started recommending to its client property owners that they include late fees in their leases of no more than $50. Tomasevic Decl., Ex. 1, Settlement Agreement at VI.C. Greystar will continue to do so for 4 years. *Id.*

## IV.    THE COURT APPOINTED ADMINISTRATOR SENT DIRECT NOTICE TO CLASS MEMBERS. THUS FAR THERE ARE NO OBJECTORS

The parties chose and the Court appointed Angeion Group, LLC as the Settlement Administrator. *See* Dkt. No. 140 at 3. Angeion completed the notice program ordered by the Court. With respect to class notice content, Class Counsel often copied, verbatim, the language suggested for inclusion in class notices, in the proposed notice, and as found in the Court's Procedural Guidance. Tomasevic Decl., ¶ 34. The parties also made all specific changes to the notice as requested by this Court in June. *See,* Dkt. Nos. 137, 138.

After receiving the necessary class data, and finishing a contact information cleansing and validation process, Angeion sent the court ordered notice to class members. Shumway Decl., ¶¶ 1-13; *id.* at Exs. B & C (copies of notices sent to class members). There are 21,898 class members. *Id.* at ¶ 6. Angeion was able to confirm 20,092 valid email addresses for those class members and it then emailed the court approved notice to those class members in October. *Id.* at ¶¶ 7-8. Angeion sent notice by mail to class members for whom either a valid email address was lacking, or when the email bounced back as undeliverable despite having been sent to a confirmed email address. *Id.* at ¶¶ 8-11.[2]

---

[2] As Class Counsel pointed out before the Court preliminarily approved this notice program, a mostly email-based notice program, is the best notice practicable under the circumstances given the relative

1       Angeion also created a dedicated, case-specific settlement website where Settlement Class

2  Members could and did obtain further information about the case and the Settlement and submit

3  requests to receive their recovery electronically. *Id.* at ¶ 14-15. Angeion also established a toll-free

4  telephone number that Class members could (and did) call for more case information. *Id.* at ¶ 16.

5       Class Members still have until December 9, 2024 to opt out or object. *Id.* at ¶ 18. But thus

6  far, Angeion has not received any objections. *Id.* at ¶¶ 18-19. There have been only 24 exclusion

7  requests. *Id.* The parties will update the Court, in writing, before the final approval hearing as to any

8  objections or exclusion requests received and come to the fairness hearing prepared to further discuss

9  same.

## V.    <u>FINAL APPROVAL IS WARRANTED HERE</u>

### A.    **Legal Standard.**

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Dexter's, LLC v. Gruma Corp.*, 2023 WL 8790268, *2 (S.D. Cal. Dec. 19, 2023).

       A court considers several factors in determining whether a Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e). The court should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking into consideration the risks associated with continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement

---

costs and the capacity to better reach class members. Dkt. No. 131-1, Tomasevic Declaration in support of Preliminary Approval, ¶ 34. As to costs, the individual damages (and, hence, the individual recovery) are relatively modest here, meaning that a pure first-class mail program costing substantially more would consume a relatively high proportion of the overall recovery. Moreover, as to reach, this is a situation where, in counsels' experience, mail is less reliable than email. That is because these class members, by definition, did not own their homes. Class members move apartments and sometimes move frequently. However, class members do not typically "move" email addresses as often. Counsel had used such notice plans before, and had them approved, in other cases, including other apartment late fee cases. *Id.*

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  agreement; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ.

2  P. 23(e)(2).

3  In our Circuit, there is a "strong judicial policy that favors settlements, particularly where

4  complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th

5  Cir. 1991). "Litigation settlements offer parties and their counsel relief from the burdens and

6  uncertainties inherent in trial. … The economies of litigation are such that pretrial settlement may

7  be more advantageous for both sides than expending the time and resources inevitably consumed in

8  the trial process." *Franklin v. Kaypro*, 884 F. 2d 1222, 1225 (9th Cir. 1989).  To that end, the Ninth

9  Circuit has articulated its own factors for final approval, which although they predate revised Rule

10  23(e), they overlap with the Rule:  (1) the strength of plaintiffs' case; (2) the risk, expense,

11  complexity, and likely duration of further litigation; (3) the risk of maintaining the case as a class

12  action; (4) the amount of recovery; (5) the extent of discovery completed and the stage of

13  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;

14  and (8) the reaction of class members. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The

15  relative degree of importance to be attached to any particular factor will depend upon and be dictated

16  by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

17  circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City*

18  *& Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "[t]he initial decision to

19  approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

20  All factors indicate that this settlement is fair and should be approved.

21  **B.    The Class Was Adequately Represented.**

22  Rule 23(e)(2) requires the Court to consider whether "the class representatives and class

23  counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Relatedly, the Court

24  also considers the experience and views of counsel. *See Staton*, 327 F.3d at 959. "'Great weight' is

25  accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

26  underlying litigation. This is because '[p]arties represented by competent counsel are better

27  positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

28  the litigation.'" *Dexter's, LLC v. Gruma Corp.*, 2023 WL 8790268, at *3 (S.D. Cal. Dec. 19, 2023);

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In*

2  *re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

3       Here, Class Counsel – who recommends this settlement – includes experienced class action

4  trial attorneys having specific experience, and a track record of success, in landlord/tenant class

5  actions, along with class actions of all types. Tomasevic Decl., ¶¶ 2-17. Counsel also diligently

6  investigated this case, deflected all pleading challenges, conducted significant discovery including

7  written discovery, third party discovery, and depositions, successfully prosecuted and defended

8  discovery disputes, and gathered evidence and research to put together a robust motion for class

9  certification. *Id.* at ¶¶ 24-28.

10      Further, Class Counsel represents that Mr. Zeff has been instrumental in starting and

11 shepherding this case over many years, having participated actively in discovery, depositions,

12 settlement discussions, and so forth, and having devoted much personal time to the prosecution of

13 this matter. *Id.* at ¶ 37. The class was adequately represented here, supporting preliminary approval.

14      **C.    The Settlement Was Negotiated at Arm's Length and Was Reached Only After**

15           **Years of Litigation.**

16      Courts must ensure settlements are not the product of collusion or other conflicts of interest.

17 *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (2011); *Staton*, 327 F.3d at 960.

18 "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."

19 *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Also, "[t]he assistance of an experienced mediator

20 in the settlement process confirms that the settlement is non-collusive." *Pederson v. Airport*

21 *Terminal Servs.*, 2018 WL 11354549, at *6 (C.D. Cal. Aug. 3, 2018).

22      Here*,* the Settlement Agreement is the result of arm's-length negotiations involving

23 experienced counsel who are well-versed in the applicable substantive law, class action litigation

24 procedures, and the legal and factual issues of this case. Tomasevic Decl., ¶¶ 2-17, 24-28. The Parties

25 attended a full day of mediation with a retired Judge, did not settle, but then reached agreement only

26 after the Judge continued to work with the parties and made a final "mediator's proposal." The

27 Settlement occurred after more than three years of hard-fought litigation, only after the parties had

28 conducted enough due diligence and discovery to brief class certification, and only after extensive

written and documentary discovery, depositions of the parties, and several contested motions. *Id.* at ¶¶ 2-17, 24-30. "[S]uch negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

Finally, the Ninth Circuit has highlighted additional "signs" that may suggest collusion, or that the settlement was not truly negotiated at "arm's length:" (1) when counsel receive a "disproportionate" distribution of the settlement, such as "when the class receives no money but class counsel are amply rewarded;" (2) when the parties negotiate a 'clear sailing' arrangement where the parties have agreed on an amount of attorneys' fees that the Defendant agrees beforehand not to contest; and (3) when the parties arrange for reversion of funds back to the Defendant, e.g., when claims to funds are not made or if fees are not awarded.  *In re Bluetooth*, 654 F.3d at 947; *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

None of these warning signs are present here. Class Counsel here are seeking, in fees, 25% of the total cash component of this settlement, and without assigning *any* value to the four years of relief Defendant agreed to in the form of recommending to its client owners to cap late fees at $50. And there is no "clear sailing" agreement here nor any possibility of reversion. Indeed, the settlement does not require any claims at all. Class Members will automatically receive payment according to the number of late fees they paid. This settlement was negotiated at arm's length only after counsel fully informed themselves through years of litigation, discovery, and motion work, and only with the assistance of an experienced mediator. This settlement is worthy of the presumption of fairness.

**D.    The Settlement is Adequate Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and compared to the Results Achieved.**

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 (internal quotation marks omitted).

The Settlement provides substantial monetary relief—over $2.46 million—that is well-tailored to the alleged harm. Plaintiff in this case alleges that Greystar charged excessive "late" fees that were not proper liquidated damages, but rather, illegal penalties.  The settlement addresses the

alleged harm by paying money meant to be, in essence, a partial refund of these fees.  Moreover, Defendant collected on behalf of property owners about $6.569 million in late fees from the class during the relevant period.  Tomasevic Decl., ¶ 35. A recovery today, before certification, of about 37.4% of the total collected, represents a substantial portion of what realistically could have been achieved in this case, even assuming Plaintiff was able to overcome the various remaining hurdles to certification and other milestones, successfully try this case to judgment, and hold onto that judgment through appeals. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (approving a settlement representing 15% of the potential recovery).

Of course, Defendant vehemently denied that the late fees were in any way unreasonable or improper.  Defendant had evidence that the late fees were reasonable in relation to actual damages and set fairly because actual damages are difficult to quantify precisely under the circumstances. *Cf. Cleven v. Mid-Am. Apt. Communities, Inc.*, 20 F.4th 171, 177 (5th Cir. 2021) (a late fee need only be "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent.").  Defendant had documents to support the late fees, including financials and labor cost information.  Dkt. No. 137 at 1-2.  Defendant also had evidence that costs to collect late rent actually *exceeded* the amounts gathered through the late fee. *Id.* Defendant had also previously retained an expert, as part of prior litigation, that testified in support of the late fee. *Id.* If it had not settled, this case was going to continue its hard-fought nature, probably would not be subject to summary adjudication by either side and would have been expensive to try.  The risks were significant on both sides.

The recovery here is even better once we factor in Defendant's or its clients' entitlement to "set off," and the difficulties in proving or disproving the relevant amounts.  That is, even if successful on the core question of liability, calculating the potential *net* class damages in this case with precision is very difficult (Defendant would argue impossible).  Even if Plaintiff succeeded in obtaining a ruling that all fees were excessive or improper, that would have been just the start of the analysis, not the end.  That is because even if Defendant is not entitled to the standard late charge

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

as a *liquidated* damage, it would nonetheless be entitled to recover its *actual* damages as a potential setoff to any class member recovery here. *See*, *e.g.*, *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 511 P.2d 1197, 1203 (Cal. 1973) (Even if the charge is found to be void, the consumer does not "escape[] unscathed. He remains liable for the actual damages resulting from his default."). Plaintiff's recovery of over 37% of all *gross* fees, in other words, assumes he could prove that every late fee assessed was improper *every* time, and *also* that setoff was worth zero – which is not realistic.

And, of course, Greystar had defenses to class certification in the first instance. If Plaintiffs failed to certify a class, the practical result would be no relief at all for the class. Indeed, a California Superior Court, in 2016, denied another tenant's motion to certify a late fees class against Greystar in California. Dkt. No. 137 at 1. Thus, a pre-certification recovery here of over 37% of gross damages (again, not accounting for setoff and ascribing a value of $0 to the prospective/injunctive relief) is a strong result for Settlement Class Members, particularly in light of the significant risks and challenges, and the substantial complexity, of ongoing litigation.

While Plaintiff absolutely believes that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiff and the proposed Class would face if the litigation were to continue. The proposed Settlement provides considerable, appropriately tailored relief while allowing Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Finally, the settlement also provides another significant benefit that would not be available if the litigation were to continue—prompt relief. Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals.

**E.    The Proposed Settlement Compares Favorably to Other Comparable Cases.**

While the sample size is small, this case compares favorably to other "late fee" class actions that have settled. As also discussed during preliminary approval, the two known comparable cases are *McCumber, et. al. v. Invitation Homes* (N.D. Tex. Case No. 21-cv-02194) and *Seltzer v. G.H. Palmer Associates, et al.* (L.A. Superior Court Case No. 18STCV07828). Counsel for Plaintiff here is currently serving as counsel for the class in *McCumber*. The settlement in *McCumber* was recently

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

finally approved. *Seltzer* was finally approved on January 5, 2024. Tomasevic Decl., ¶ 38.[3]

Additional relevant details of those cases include the following:

|  | *McCumber v. Invitation Homes* | *Seltzer v. G.H. Palmer* |
|---|---|---|
| **Released Claims** | Excessive late fees charged at rental houses located in 11 different states, including California (and brought under the statutory and common law of all 11 of those states) | Excessive late fees charged at apartments in California (Civil Code Section 1671, Bus. & Prof. Code §§ 17200, et seq.) |
| **Total Settlement Fund** | $7.5 million ($5.625 million cash, $1.875 million in the form of debt forgiveness) | $1.75 million all cash |
| **Total Number of Class Members** | 133,200 | 24,706 |
| **Average Recovery per class member** | $56.31 gross, including the debt forgiveness | $70.83 gross |
| **Amounts Distributed to *Cy Pres*** | Data not yet available | Data not yet available |
| **Administrative Costs** | ~ $175,000 | $135,511.48 |
| **Attorneys' Fees & Costs** | $2,304,425 ($2,250,000 in fees, or 30% of the total recovery) | $583,333.33 ($532,532.56 in fees, or 30.4% of the recovery) |
| **Total Exposure if Plaintiff Had Prevailed on Every Claim** | ~ $84 million before any setoff | $4,470,615.46 |

*See* Tomasevic Decl., ¶ 39.

Here, the average gross recovery per class member is $112.67 ($2,467,238.40 divided by 21,898) – which greatly exceeds the recovery in the two examples above.[4]  And Counsel here achieved this recovery spending less on litigation costs, less in administration fees, and they are asking for a smaller portion for fees (25% vs. 30%). This supports final approval here.

---

[3] The *Seltzer* settlement website is at https://ghplatefeesettlement.com (last accessed Nov. 13, 2024). The *McCumber* website is at https://www.invitationhomessettlement.com (last accessed Nov. 13, 2024).
[4] *See also* the Shumway Decl. at ¶ 17 (highest payout will be $2988).

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    **F.    The Proposed Relief Distribution is Effective and Efficient.**

2        In determining the effectiveness of distributing the proposed relief, the Court should also

3    "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A

4    claims processing method should deter or defeat unjustified claims, but the court should be alert to

5    whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note

6    to 2018 amendment; *Dexters, LLC*, 2023 WL 8790268, at \*5.

7        Here, Class Members will not be required to make a formal claim as a condition of recovery.

8    Class Members will receive their payments simply by being members of the class without any

9    possibility of reversion back to Defendant. Nor is there any danger of any illegitimate claims

10   because, once again, there is no claims process, plus we know the actual identities of every class

11   person and their number of late fees paid, because it was Greystar's job to track such information in

12   the normal course of business. Class treatment here is manageable, and relief distribution will be

13   efficient without facing any systematic fraud threats. This supports approving the class wide

14   Settlement. *Dexters, LLC*, 2023 WL 8790268, at \*5.

15   **G.    The Proposed Allocation Plan is Also Fair.**

16       Next, the plan of allocation of the Settlement to Class Members is also fair and reasonable.

17   The plan is objective. Individual payouts will be made proportionally and objectively according to

18   the number of late fees the class member paid during the class period.  I.e., the greater their alleged

19   damage, the greater their recovery.

20   **H.    The Requests for Fees and Costs is Reasonable.**

21       Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties'

22   agreement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Here, the

23   Settlement provides that Counsel may petition the Court for an award of fees (and an award of

24   litigation expenses). Tomasevic Decl., Ex. 1 at p. 8. Moreover, in cases like this one where recovery

25   is made on behalf of a class through the establishment of a common fund, "a litigant or lawyer who

26   recovers a common fund for the benefit of persons other than himself or his client is entitled to a

27   reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

28   (1980).

Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyers' "reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

In calculating the reasonable attorney's fees, district courts have discretion to choose between a lodestar method or a "percentage method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Where, as here, funds have been obtained, an award of fees on a percentage basis is the norm. "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942; *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (describing "significant benefits to the percentage approach"). As the Ninth Circuit has recognized, "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the [district] court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003). Moreover, because all payouts are non-reversionary, and because Plaintiffs here did not insist on any "clear sailing" provision regarding fees, none of the indicia of possible collusion, requiring added scrutiny, exist here. *Cf. Briseno*, 998 F.3d at 1023 (discussing settlement red flags, like reversion, that are not present here).

### 1. A Benchmark Fee of 25% of the Total Recovery is Reasonable Here.

Our Circuit has established 25% of recovered funds as an initial benchmark award for attorney fees. *Staton*, 327 F.3d at 968 (quoting *Hanlon*, 150 F.3d at 1029). An award of 25 percent of the common fund – **$616,809** here – is "presumptively reasonable," although our Ninth Circuit also has affirmed fee awards far greater than 25%. *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (citing *In re Bluetooth Headset Products Liability Litigation*, 654

F.3d at 942); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of class recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding that while 25% is the "benchmark," the lower court appropriately used its discretion to award 33% based on a case's complexity and risks).

Here, Counsel obtained excellent relief for the tenants only after assuming substantial risks in proceeding on a contingency fee basis in a highly complex class action case. They seek no more than the 25% "benchmark" fee here, which is justified, first, because of the great result here: recovery of over 37% of gross fees collected, without regard to the substantial setoffs Greystar would be entitled to and without regard to any value created by late fees being reduced to $50 going forward. Counsel also achieved this result, on behalf of over 21,000 consumers, without having to test a class certification motion, then withstand Fed. R. Civ. P. 23(f) petitions, decertification requests, or appeals. Moreover, Counsel here are asking for less, on a percentage basis, than what Plaintiffs' counsel received in each of the two comparable late fee cases described above: *McCumber* and *Seltzer* (30% or more awarded in each case).

Next, it has been a long-recognized principle that an attorney merits a significantly larger fee when the compensation is contingent, rather than being fixed on a time or contractual basis. *See Vizcaino*, 290 F.3d at 1048–51. During the years this case has been pending, Class Counsel have poured significant resources into its active litigation. They took and defended depositions and spent almost 1000 hours of attorney time litigating and preparing the case for class certification and dispositive motions. Since the case resolved, Class Counsel have performed additional work, including negotiating the terms of Settlement; successfully moving for preliminary approval; and responding to questions regarding settlement administration issues. Class Counsel will continue to do so until all Settlement funds are paid, and the case is closed. Tomasevic Decl., ¶ 40.

This significant commitment of time and money has been completely at risk and wholly dependent upon obtaining a substantial recovery for the Class. *See* Tomasevic Decl., ¶ 42. Class Counsel's assumption of these risks supports the requested fee award. *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (risk of nonpayment a factor warranting upward adjustment in lodestar fee award); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(C.D. Cal. June 10, 2005) ("Plaintiffs' counsel proceeded entirely on contingency basis, while paying for all expenses incurred. There was no guarantee of any recovery, and thus, counsel was subjected to considerable risk of no compensation for time or no reimbursement for expenses."); *see also*, *e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8–9 (S.D. Cal. June 1, 2010) (awarding one-third of common fund where, among other factors supporting the upward departure, "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it for more than two years").[5]

Finally, in addition to a risk of no recovery, Class Counsel bore the risk that any resolution of the case would have been on less favorable terms, or taken longer, and that a fair and reasonable common fund settlement could have compensated Class Counsel at a rate far below their lodestar. This risk is not hypothetical. *See*, *e.g.*, *Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) (approving award of attorneys' fees in class settlement resulting in a fee recovery of approximately 50 percent of Class Counsel's lodestar).

### 2. Counsel's Lodestar Supports the Fee Request.

Courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) (approving the district court's "informal lodestar cross-check" for confirming the reasonableness of the percentage award); *Vizcaino*, 290 F.3d at 1050 (similar). A "lodestar" calculation multiplies the number of hours reasonably expended on the litigation by counsel's reasonable hourly rates, depending on the region and the experience of the lawyer. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941. A court may then adjust the fees "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* at 941-42.

---

[5] Class Counsel's risk was enhanced by the fact that they are a small local firm with fewer than fifteen attorneys, such that the time and expenses incurred imposed a significantly greater proportional burden. *See Boyd v. Bank of Am. Corp.*, 2014 WL 6473804 at *10 (C.D. Cal. 2014) (awarding *increase from* the benchmark rate where class counsel were small firms of fewer than 15 attorneys which "face even greater risks in litigating large class actions with no guarantee of payment". Again, counsel here are not asking for more than the 25% benchmark).

PLAINTIFF ZACHARY ZEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Here, Counsel's request for a fee of $616,809 is supported by their lodestar. Counsel have expended over 892 hours in pursuit of this matter.  Tomasevic Decl., ¶¶ 42, 45, Ex. 2. As further enumerated in the accompanying declaration of Alex Tomasevic and summary hours report, this equates to a current total lodestar of $ 450,747.50.  This represents a requested "multiplier" of 1.37. And, of course, counsels' work is not yet done, so the lodestar will only go up (and the multiplier will go down).

As to hourly rates, Class Counsel's rates are reasonable, comparable to those of other class action attorneys with similar experience and years of practice, well within the range of those found to be permissible for attorneys practicing class action litigation in this market and have been universally approved by courts in recent cases. Tomasevic Decl., ¶¶ 51-53.

Next, the hours recorded by Class Counsel are reasonable. Counsel has spent over 892 hours litigating this case thus far. Tomasevic Decl., ¶¶ 40-48, Ex. 2. The summary set forth in and attached to the Tomasevic declaration describes the work performed by Class Counsel, which includes fact investigation; drafting the complaint, propounding and responding to written discovery; working with witnesses, defending Plaintiff's deposition; taking depositions;  engaging in motion practice – including pleading challenges, discovery motions, and moving for class certification; attending mediation; negotiating the Settlement; working with the Claims Administrator; and other tasks necessary to this litigation. Tomasevic Decl., ¶¶ 18-28.

The lodestar cross-check multiplier of 1.37 does not warrant deviation from the 25% request given the results Plaintiffs have obtained. The Ninth Circuit has recognized that multipliers typically range up to 4x, that Courts "commonly apply multipliers in that range," and often apply multipliers that far exceed that range. *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *17-18 (N.D. Cal. Dec. 8, 2021) (multiplier of 5.5); *Uschold v. NSMG Shared Servs., LLC*, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (multiplier of 4); *Lazarin v. Pro Unlimited, Inc*., No. C11–03609 HRL, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (3.36 multiplier); *McLeod v. Bank of America*, 2019 WL 1170487, at *7 (N.D. Cal. 2019) (awarding 27.2% of the common fund in attorneys' fees, equal to a 3.5 multiplier); *see also Steiner v. Am. Broad. Co*., 248 F. App'x 780, 783 (9th Cir. 2007) (finding a 6.85 multiplier "falls well within the range of multipliers that courts have allowed.").

Moreover, unlike the kinds of class actions that are often repeated and that this Court sees frequently – like securities cases under the PSLRA, or antitrust cases, or even other UCL consumer cases like food mislabeling cases – the issues presented in this case are more novel and are built on less precedent.  There are only a handful of comparable cases out there.  That is, there is comparatively little prior class action litigation under California Civil Code Section 1671 as applied to residential late fees. Indeed, Plaintiffs' counsel was one of the first to seriously analyze and challenge what had been taken for granted as typical practice by landlords for decades:  charging automatic flat late fees as part of leases. The multiplier, and ultimately Counsel's fee request is reasonable under the circumstances and should also be granted.

## VI.    <u>THE COURT SHOULD ALLOW REIMBURSEMENT OF COSTS</u>

Courts may reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a contingent fee basis. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941. To that end, "courts throughout the Ninth Circuit regularly award litigation costs and expenses— including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses" to Class Counsel. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services).

Here, Plaintiff's current costs are $ 12,907.84.  *See* Tomasevic Decl., ¶ 49; Ex. 3. Plaintiff seeks reimbursement of actual costs as of the time of the effective date of the settlement, not to exceed $15,000.  The costs incurred – including filing fees, deposition expenses, mediation fees, legal research charges, and travel costs – were necessary and reasonable. *Id.*  They are also reasonable in light of the recovery in this case – amounting to only 0.6% percent of the total settlement value. *See*, *e.g.*, *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (approving litigation costs of nearly 2% of the common fund). Counsel were also able to resolve this case for only a fraction of the costs expended in the two comparable cases referenced above – *McCumber* and *Seltzer* (each requiring over $50,000 in costs).  The request for reimbursement of costs should also be approved.

**VII.    THE REQUESTED ADMINISTRATION COSTS ARE ALSO REASONABLE**

Next, the reimbursement of expenses requested by the Settlement Administrator is reasonable.  As set forth in its declaration, Angeion processed and verified class data and contact information, and then prepared and sent out over 21,000 class notices. Angeion also conducted necessary follow-up regarding returned notices, created a settlement website and toll-free hotline, sent the CAFA notices, and will be responsible for distribution of the settlement funds. Angeion's is also poised to spend less administering this case than what was spent administering the *McCumber* and *Seltzer* cases described above.  The request to reimburse Angeion's fees from the fund should also be finally approved.

**VIII.    THE REQUESTED SERVICE AWARD IS REASONABLE**

Lastly, service awards for class representatives "are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ] to recognize their willingness to act as a private attorney general;" such awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Service awards also compensate plaintiffs for the risk of stigma and retaliation to which they have submitted and a loss of income. *Graham v. Overland Sols., Inc.*, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (quoting *Staton*, 327 F.3d at 977) (approving service awards of $25,000 each to the named plaintiffs for their time and effort, the risks they undertook, and the stigma upon future opportunities, and a general release of all claims). "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (collecting cases awarding anywhere from $25,000 to $55,000).

This Honorable Court has observed that $5,000 is "generally" a reasonable amount to award to class representatives. *See Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *6-8 (N.D. Cal. Feb. 6, 2012) (Chen, J.) (but ultimately awarding $12,500 in that case). However, higher amounts are often justified. *Id.* (citing *Thieriot v. Celtic Ins. Co.*, 2011 U.S. Dist. LEXIS 44852, at *21-22 (N.D. Cal. Apr. 21, 2011) (awarding $25,000), *Chu v. Wells Farbo Invs., LLC*, 2011 U.S. Dist.

1  LEXIS 15821, at *14 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 but noting that it is "perhaps

2  somewhat on the high end of the acceptable range")).

3      Plaintiff here seeks $10,000 in exchange for providing a broader, general, release of claims

4  than compared with the rest of the class, and in recognition of his assistance throughout the litigation

5  of this case.  Plaintiff lent his name to the case, thus subjecting himself to public attention, including

6  to the attention of future landlords who, in the normal course of business conduct background checks

7  on prospective tenants, including by looking for lawsuits – especially lawsuits against other

8  landlords.  Plaintiff also spent 100 or more hours on the case by helping to draft the pleadings; he

9  searched for and produced documents, sat for an all-day in-person deposition, helped with written

10 discovery, assisted settlement efforts, and was actively engaged with counsel throughout this case.

11 *See* Tomasevic Decl., ¶ 37.   Mr. Zeff also had to endure his parents being subpoenaed, including

12 their financial records and other sensitive personal information.  *Id.* The request for a $10,000 service

13 award is reasonable under the circumstances.

14 **IX.    CONCLUSION**

15     Based on the forgoing, Plaintiff Zachary Zeff respectfully requests that the Court grant final

16 approval of the proposed Settlement including the proposed payments to the class and for attorneys'

17 fees, costs, administrator costs, and Mr. Zeff's Service Award.

18 Respectfully Submitted,

19 Dated: November 14, 2024              **NICHOLAS & TOMASEVIC, LLP**

20                          By:    */s/ Alex Tomasevic*
                                 Craig M. Nicholas (SBN 178444)
21                               Alex Tomasevic (SBN 245598)
                                 Jordan Belcastro (SBN 339570)
22                               225 Broadway, 19th Floor
                                 San Diego, California 92101
23                               Tel: (619) 325-0492
                                 Fax: (619) 325-0496
24                               Email: cnicholas@nicholaslaw.org
                                 Email: atomasevic@nicholaslaw.org
25                               Email: jbelcastro@nicholaslaw.org

26                               Attorneys for Plaintiff

27

28